# FITTS *v.* McGHEE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ALABAMA.

No. 130. Argued October 26, 1898. — Decided January 3, 1899.

A suit brought by the receivers of a railroad against the Attorney General of the State of Alabama and the Solicitor of the Eleventh Judicial Circuit of that State, to restrain them, as officers of the State, from taking steps to enforce against the complainants the provisions of a law of that State reducing the tolls which had been exacted of the public under a prior law for crossing on a bridge of the railroad over a river, is a suit against the State, and this court accordingly reverses the judgment of the court below, adjudging that the latter law was unconstitutional and void, and that the defendants should not institute or prosecute any indictment or criminal proceeding against any one for violating the provisions of that act, and directed the court below to dissolve its injunction restraining the institution or prosecution of indictments. or other criminal proceedings so instituted in the state courts, and to dismiss the suit so brought by the receivers against the Attorney General of Alabama and the Solicitor of the Eleventh Judicial Circuit of that State.

An act of the General Assembly of Alabama, approved February 9, 1895, prescribed certain maximum rates of toll to be charged on the bridge across the Tennessee River between the counties of Colbert and Lauderdale in that State, and known as the Florence bridge. It also declared that should the owners, lessees or operators of the bridge, by themselves or agents, demand or receive from any person a higher rate of toll than was prescribed, he or they should forfeit to such person twenty dollars for each offence, to be recoverable before any justice of the peace or notary public and *ex officio* justice of the peace of either of the counties named.

When that act was passed the cases of *Samuel Thomas* v. *Memphis and Charleston Railroad Company* and *Central Trust Company of New York* v. *Memphis and Charleston Railroad Company* were pending in the court below; and on the 14th day of February, 1895, Charles M. McGhee and Henry Fink, receivers of the Memphis and Charleston Railroad in those causes — having first obtained leave to do so —

filed a bill in the name of themselves and the railroad company against " the State of Alabama, William C. Oates, as Governor of the State of Alabama, and William C. Fitts, as Attorney General of the State of Alabama."

After setting out their appointment as receivers, the order of the court below authorizing the institution of the present suit, the official character of the several defendants, the ownership by the Memphis and Charleston Railroad Company of the bridge in question, the above act of February 9, 1895, the manner in which that company acquired the right to construct and own the Florence bridge, the charters of the railroad company granted by Tennessee and Alabama, the purchase in 1850 of the bridge by the railroad company under the charter granted by Alabama, and its management of the bridge under the charter of the Florence Bridge Company, the plaintiffs averred that the act incorporating the Bridge Company was a contract between the State and the owners of the bridge; that the rights acquired by that company under its charter passed to the Memphis and Charleston Railroad Company ; that the rates of toll fixed by the act were arbitrary, unreasonable and amounted virtually to the confiscation of the plaintiffs' property, and that the act was in violation of the Constitution of the United States in that such a legislative enactment deprived the owners of the bridge of their property without due process of law, and denied to them the equal protection of the laws.

It was further alleged that the clause in the act imposing a penalty for demanding or receiving higher rates of toll than those prescribed was intended and had the effect to deter the plaintiffs from questioning by legal proceedings the validity of such legislation.

After stating that they were remediless except by a bill in equity, the plaintiffs prayed that " process of subpœna be issued to and served upon the State of Alabama, the said William C. Oates, as Governor of the State of Alabama, and William C. Fitts, as Attorney General of the State of Alabama," requiring them, " in behalf of the State," to answer the bill, and that an injunction be granted prohibiting and restrain-

ing said William C. Oates, as Governor of the State of Alabama, and said William C. Fitts, as Attorney General of the State of Alabama, and all persons whomsoever, from instituting any proceeding against the complainants or either of them under the forfeiture clause above set out in the second section of said act of the General Assembly of Alabama.

Subpœnas to appear, answer or demur to the bill were issued and served upon defendant Oates, as Governor, and upon defendant Fitts, as Attorney General of the State. A subpœna was also issued against the State, and served upon the defendant Oates, as Governor.

A temporary injunction was issued, restraining and enjoining William C. Oates, as Governor of Alabama, and William C. Fitts, as Attorney General of the State, and "all persons whomsoever, from instituting or prosecuting any proceedings" against the plaintiffs, or either of them, under the forfeiture clause contained in the above act of February 9, 1895.

The defendants appeared specially for the purpose of moving, and did move, that the bill be dismissed upon the ground that the suit was one against the State, and prohibited by the Constitution of the United States.

The plaintiffs, by leave of the court, amended their bill by adding thereto paragraphs to the effect that frequent and numerous demands had been made by persons on foot, on horseback and in vehicles of the toll-gate keeper at the bridge to pass them over at the rate of toll fixed by the act, and upon the refusal of the toll-gate keeper to permit them to pass by the payment of the rates so fixed, and his requiring them to pay the rates of toll fixed by the plaintiffs, they had paid the tolls so required of them under protest, and had threatened to institute suit or suits against the plaintiffs under the penalty clause of the act, and had also threatened to procure proceedings to be instituted in the courts by the Governor and Attorney General in the name of the State, by a mandamus or otherwise to compel the plaintiffs to pass people over the bridge at the rates fixed by the act; that those persons had also threatened to procure proceedings to be instituted in the name of the State for a forfeiture of the franchise of the Mem-

phis and Charleston Railroad Company in and to the bridge property because of the failure and refusal to observe and obey the requirements of the act in reference to the rates of toll to be charged over the bridge; and that the persons so protesting and threatening suits were too numerous to be made parties to that suit. Special reference was made to William H. Gilliam, a resident citizen of Colbert County, Alabama, as one of the parties or persons who had made threats of such suits and proceedings.

The bill was amended by making Gilliam a party defendant, and by adding before the prayer for general relief, a prayer " that an injunction be granted prohibiting and restraining said William C. Oates, as Governor of the State of Alabama, and said William C. Fitts, as Attorney General of the State of Alabama, and said William H. Gilliam and all persons whomsoever, from instituting or procuring the institution of any proceedings against these complainants, or either of them, by mandamus or otherwise, to compel the observance and obedience of said act in reference to the rate of tolls fixed thereby over the said bridge, and also from instituting or procuring to be instituted any proceeding against these complainants, or either of them, for the forfeiture of the franchise of the Memphis and Charleston Railroad Company in and to the said bridge on account of the refusal to charge the rates of toll over it fixed by said act."

Subsequently, an order was made, enjoining and restraining William C. Fitts, as Attorney General of the State of Alabama, and William H. Gilliam, and all persons whomsoever, until the further order of the court, from instituting or procuring the institution of any proceeding against the plaintiffs or either of them, by mandamus or otherwise, to compel the observance and obedience of the act in reference to the rate of tolls fixed thereby over the Florence bridge, and from instituting or procuring to be instituted any proceedings against the plaintiffs or either of them for the forfeiture of the franchise of the Memphis and Charleston Railroad Company in and to the bridge on account of the refusal to charge the rates of toll over it fixed by the act.

At a later date in the progress of the cause the plaintiffs, by leave of the court, inserted the following averments in the bill:

"Complainants would further show unto your honors that at the fall term 1895 of the Circuit Court of Lauderdale County, Alabama, a large number of indictments — some one hundred in number — were found by the grand jury of said court against Thomas Clem and G. W. Brabson, who are the toll-gate keepers at the public crossing of said bridge for complainants, the receivers of the Memphis and Charleston Railroad Company. These indictments were found under section 4151 of the Criminal Code of Alabama, which reads as follows: '4151 (4401). Any person who, being or acting as an officer, agent, servant or employé of any turnpike company, macadamized road company or other incorporated road or bridge company, takes, receives or demands any greater charge or toll for travel or passage over such road or bridge than is authorized by the charter of such company, or, if the charter does not specify the amount of toll to be charged or taken, fixes, prescribes, takes, receives or demands any unreasonable charge or toll, to be determined by the jury, must, on conviction, be fined not more than one hundred dollars.' Complainants allege and show unto your honors that these indictments were improperly and wrongfully found against said toll-gate keepers, and they are being improperly prosecuted thereby, because the rate of toll which they have charged is only the rate which has heretofore been fixed by the receivers, which was fixed by them before the passage of said unconstitutional act of the General Assembly of Alabama reducing the tolls, and is the same rate of tolls which have been charged for more than twenty years by the Memphis and Charleston Railroad Company for the use by the public of said bridge, and the tolls so charged by said toll-gate keepers were authorized by this court, and said indictments have been found and are being prosecuted in violation of the authority of this court and of its orders in the premises, and in violation of the constitutional rights and privileges under the Constitution of the United States, secured

to the owners of said bridge in the charging of tolls before crossing it. A. H. Carmichael is the Solicitor for said judicial circuit, and as such is engaged in the prosecution of said indictments."

The plaintiffs asked that Carmichael, as such solicitor, be made a party defendant ; that all needful process issue against him ; and that a restraining order be issued enjoining him and all other persons from the prosecution of said indictments.

By a supplemental bill it was averred that writs of arrest had been issued upon the above indictments against Clem and Brabson, and placed in the hands of the sheriff, who in execution thereof had arrested or would arrest the said employés of the receivers. It was further alleged that these criminal proceedings were in contempt of the order of the court below appointing the receivers, as well as in violation of the injunction which the court had issued, and which still remained in force, " enjoining the said Governor, Attorney General and all persons whomsoever from instituting any suits or proceedings " under the above act of the State.

After referring to the indictments and the purpose on the part of the state officers to proceed under them, the plaintiffs prayed that the act of February 9, 1895, be declared repugnant to the Constitution of the United States and invalid, inoperative, null and void, and that an injunction be granted " prohibiting and restraining William C. Oates, as Governor of the State of Alabama; William C. Fitts, as Attorney General of the State of Alabama, W. H. Gilliam and A. H. Carmichael, Solicitor as aforesaid, and all other persons whomsoever, from instituting any proceeding against these complainants or either of them, their servants or agents, under the forfeiture clause set out in said second section of said act of the General Assembly of Alabama;" that said officers " and all persons whomsoever be restrained and enjoined from instituting or procuring the . institution of any proceeding against these complainants or either of them, their agents, servants or employés, by a mandamus or otherwise, to compel the observance and obedience to said act in reference to the rate of tolls fixed thereby over said bridge, and also from instituting

or procuring to be instituted any proceeding against these complainants or either of them for the forfeiture of the franchise of the Memphis and Charleston Railroad Company in and to said bridge on account of the refusal to charge the rates of toll over it fixed by the said act;" and that "the said defendants and said Carmichael, Solicitor as aforesaid, and all persons whomsoever, be restrained and enjoined from prosecuting said indictments against the said servants, agents and employés of the complainants, or from interfering in any way, under and by virtue of the color of said unconstitutional act, with the rights, privileges, and franchises and property of the complainants, their servants or agents, with regard to said bridge."

At this stage of the proceedings the plaintiffs dismissed the cause so far as the State was made a party defendant, and amended the bill by striking out its name as a defendant, as well as the words "in behalf of the State." The cause was then heard upon a motion by the Governor and Attorney General to dismiss the bill upon the ground that the suit was one against the State in violation of the Constitution of the United States.

Upon the filing of the last amendment to the original bill, it was ordered by the court that A. H. Carmichael, as Solicitor for the Eleventh Judicial Circuit of Alabama, be enjoined and restrained temporarily, and until the further orders of the court, "from instituting or prosecuting as such Solicitor any indictments or criminal proceedings against any one for a violation of the alleged unconstitutional act of the Legislature of Alabama described in the bill."

The next step in the proceedings was the suing out of writs of *habeas corpus* by Clem and Brabson, who were under arrest on process issued on the above indictments. Each of the petitioners was released upon his own recognizance in the sum of $150, conditioned that he would appear in court from day to day until discharged.

Gilliam filed an answer, insisting upon the validity of the act of the legislature which had been assailed by the bill as unconstitutional.

A decree *pro confesso* was taken against the Governor and Attorney General of the State, as well as Carmichael as Solicitor aforesaid, all in their respective official capacities. But that decree was set aside, and the cause was heard upon demurrers by the various defendants. The demurrers were overruled, and answers were filed by the Governor and Attorney General of the State and by the Solicitor of the Eleventh Judicial Circuit. There were also motions to dissolve the injunction granted in the case, upon the ground that there was no equity in the bill, and that the injunctions were in violation of the Constitution and statutes of the United States.

The final decree in the case was as follows: "This cause coming on to be heard, the submission at the former term of the court is hereby set aside, and, it being made to appear to the court that the defendant William C. Oates has ceased to be the Governor of the State of Alabama, it is thereupon ordered that the said cause be discontinued as to him, and the cause is now resubmitted at this term of the court for final decree upon the pleadings and testimony offered by the parties, and upon due consideration thereof it is considered by the court that the complainants are entitled to relief. It is thereupon ordered, adjudged and decreed that the act of the Legislature of the State of Alabama referred to and set up in the original bill of complaint in the cause, which act was approved February 9, 1895, and entitled 'An act to fix the maximum of tolls to be charged by the owners, lessees or operators of the road bridge across the Tennessee River, between the counties of Colbert and Lauderdale, and known as the Florence bridge, and to fix the penalty for demanding or receiving a higher rate of tolls,' is violative of the constitutional rights of the owners of said bridge and of the complainants as their representatives, in that it fixes a rate of tolls for said bridge which are not fairly and reasonably compensatory, and it is therefore hereby declared to be invalid and inoperative, and the injunctions heretofore granted in the cause are hereby made perpetual. It is further ordered, adjudged and decreed that the defendants pay the costs of this proceeding, for which let execution issue."

*Mr. William J. Wood* for appellants. *Mr. William C. Fitts*, Attorney General of the State of Alabama, was with him on the brief.

*Mr. Milton Humes* for appellees. *Mr. Paul Speake* was with him on the brief.

MR. JUSTICE HARLAN, after stating the facts as above reported, delivered the opinion of the court.

The principal question before us is whether this suit is one of which a Circuit Court of the United States may take cognizance consistently with the Constitution of the United States.

From the history given of the proceedings below it appears that the Circuit Court adjudged —

That the legislative enactment of February 9, 1895, was unconstitutional and void in that it did not permit the owners of the Florence bridge, and the plaintiffs as their representatives, to charge rates of toll that were fairly and reasonably compensatory; and,

That the defendants Fitts and Carmichael, holding respectively the offices of Attorney General of Alabama and Solicitor of the Eleventh Judicial Circuit of the State, should not institute or prosecute any indictment or criminal proceeding against any one for violating the provisions of that act.

Is this a suit against the State of Alabama? It is true that the Eleventh Amendment of the Constitution of the United States does not in terms declare that the judicial power of the United States shall not extend to suits against a State by citizens of such State. But it has been adjudged by this court upon full consideration that a suit against a State by one of its own citizens, the State not having consented to be sued, was unknown to and forbidden by the law, as much so as suits against a State by citizens of another State of the Union, or by citizens or subjects of foreign States. *Hans* v. *Louisiana*, 134 U. S. 1, 10, 15; *North Carolina* v. *Temple*, 134 U. S. 22. It is therefore an immaterial circumstance in

the present case that the plaintiffs do not appear to be citizens of another State than Alabama, and may be citizens of that State.

What is and what is not a suit against a State has so frequently been the subject of consideration by this court that nothing of importance remains to be suggested on either side of that question. It is only necessary to ascertain, in each case as it arises, whether it falls on one side or the other of the line marked out by our former decisions.

We are of opinion that the present case comes within the principles announced in *In re Ayers*, 123 U. S. 443, 485, 496–500, 505. It appears from the report of that case that the Circuit Court of the United States for the Eastern District of Virginia in *Cooper* v. *Marye* made an order forbidding the Attorney General of Virginia and other officers of that Commonwealth from bringing suits under a certain statute of Virginia, in its name and on its behalf, for the recovery of taxes, in payment of which the taxpayers had previously tendered tax-receivable coupons. The state officers did not obey this order, and having been proceeded against for contempt of court, they sued out writs of *habeas corpus*, and asked to be discharged upon the ground that the Circuit Court had no power to make the order for disobeying which the proceedings in contempt were commenced. This court said that the question really was whether the Circuit Court had jurisdiction to entertain the suit in which that order was made, the sole purpose and prayer of the bill therein being by final decree to enjoin the defendants, officers of Virginia, from taking any steps in execution of the statute the validity of which was questioned.

It was adjudged that although Virginia was not named on the record as a party defendant, nevertheless, when the nature of the case against its officers was considered, that Commonwealth was to be regarded as the actual party in the sense of the constitutional prohibition. The court said : " It follows, therefore, in the present case, that the personal act of the petitioners sought to be restrained by the order of the Circuit Court, reduced to the mere bringing of an ac-

tion in the name of and for the State against taxpayers who, although they may have tendered the tax-receivable coupons, are charged as delinquents, cannot be alleged against them as an individual act in violation of any legal or contract rights of such taxpayers." Again: "The relief sought is against the defendants, not in their individual, but in their representative capacity as officers of the State of Virginia. The acts sought to be restrained are the bringing of suits by the State of Virginia in its own name and for its own use. If the State had been made a defendant to this bill by name, charged according to the allegations it now contains — supposing that such a suit could be maintained — it would have been subjected to the jurisdiction of the court by process served upon its Governor and Attorney General, according to the precedents in such cases. *New Jersey* v. *New York*, 5 Pet. 284, 288, 290; *Kentucky* v. *Dennison*, 24 How. 66, 96, 97; Rule 5 of 1884, 108 U. S. 574. If a decree could have been rendered enjoining the State from bringing suits against its taxpayers, it would have operated upon the State only through the officers who by law were required to represent it in bringing such suits, viz., the present defendants, its Attorney General and the Commonwealth's attorneys for the several counties. For a breach of such an injunction, these officers would be amenable to the court as proceeding in contempt of its authority, and would be liable to punishment therefor by attachment and imprisonment. The nature of the case, as supposed, is identical with that of the case as actually presented in the bill, with the single exception that the State is not named as a defendant. How else can the State be forbidden by judicial process to bring actions in its name, except by constraining the conduct of its officers, its attorneys and its agents? And if all such officers, attorneys and agents are personally subjected to the process of the court, so as to forbid their acting in its behalf, how can it be said that the State itself is not subjected to the jurisdiction of the court as an actual and real defendant?"

One of the arguments made in the *Ayers case* was that the Circuit Court had jurisdiction to restrain by injunction officers

of the State from executing the provisions of state enact-
ments, void by reason of repugnancy to the Constitution of
the United States. In support of that position reference was
made to *Osborn* v. *Bank of the United States*, 9 Wheat. 738.
But this court said : " There is nothing, therefore, in the
judgment in that cause, as finally defined, which extends its
authority beyond the prevention and restraint of the specific
act done in pursuance of the unconstitutional statute of Ohio,
and in violation of the act of Congress chartering the bank,
which consisted of the unlawful seizure and detention of its
property. It was conceded throughout that case, in the argu-
ment at the bar and in the opinion of the court, that an action
at law would lie, either of trespass or detinue, against the
defendants as individual trespassers guilty of a wrong in tak-
ing the property of the complainant illegally, vainly seeking
to defend themselves under the authority of a void act of
the General Assembly of Ohio. One of the principal ques-
tions in the case was whether equity had jurisdiction to re-
strain the commission of such a mere trespass, a jurisdiction
which was upheld upon the circumstances and nature of the
case, and which has been repeatedly exercised since. But the
very ground on which it was adjudged not to be a suit against
the State, and not to be one in which the State was a neces-
sary party, was that the defendants personally and individu-
ally were wrongdoers, against whom the complainants had a
clear right of action for the recovery of the property taken,
or its value, and that therefore it was a case in which no other
parties were necessary. The right asserted and the relief
asked were against the defendants as individuals. They
sought to protect themselves against personal liability by
their official character as representatives of the State. This
they were not permitted to do, because the authority under
which they professed to act was void." And these were
stated by the court to be the grounds upon which it had pro-
ceeded in other cases — citing *Allen* v. *Baltimore & Ohio
Railroad Co.*, 114 U. S. 311; *Poindexter* v. *Greenhow*, 114
U. S. 270, 282; *United States* v. *Lee*, 106 U. S. 196. The
court further said : " The very object and purpose of the

Eleventh Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties. It was thought to be neither becoming nor convenient that the several States of the Union, invested with that large residuum of sovereignty which had not been delegated to the United States, should be summoned as defendants to answer the complaints of private persons, whether citizens of other States or aliens, or that the course of their public policy and the administration of their public affairs should be subject to and controlled by the mandates of judicial tribunals without their consent, and in favor of individual interests. To secure the manifest purposes of the constitutional exemption guaranteed by the Eleventh Amendment requires that it should be interpreted, not literally and too narrowly, but fairly, and with such breadth and largeness as effectually to accomplish the substance of its purpose. In this spirit it must be held to cover, not only suits brought against a State by name, but those also against its officers, agents and representatives, where the State, though not named as such, is, nevertheless, the only real party against which alone in fact the relief is asked, and against which the judgment or decree effectively operates. But this is not intended in any way to impinge upon the principle which justifies suits against individual defendants, who, under color of the authority of unconstitutional legislation by the State, are guilty of personal trespasses and wrongs, nor to forbid suits against officers in their official capacity either to arrest or direct their official action by injunction or mandamus, where such suits are authorized by law, and the act to be done or omitted is purely ministerial, in the performance or omission of which the plaintiff has a legal interest."

It was accordingly adjudged that the suit in which injunctions were granted against officers of Virginia was in substance and in law one against that Commonwealth, of which the Circuit Court of the United States could not take cognizance.

If these principles be applied in the present case there is no

escape from the conclusion that, although the State of Alabama was dismissed as a party defendant, this suit against its officers is really one against the State. As a State can act only by its officers, an order restraining those officers from taking any steps, by means of judicial proceedings, in execution of the statute of February 9, 1895, is one which restrains the State itself, and the suit is consequently as much against the State as if the State were named as a party defendant on the record. If the individual defendants held possession or were about to take possession of, or to commit any trespass upon, any property belonging to or under the control of the plaintiffs, in violation of the latter's constitutional rights, they could not resist the judicial determination, in a suit against them, of the question of the right to such possession by simply asserting that they held or were entitled to hold the property in their capacity as officers of the State. In the case supposed, they would be compelled to make good the State's claim to the property, and could not shield themselves against suit because of their official character. *Tindal* v. *Wesley*, 167 U. S. 204, 222. No such case is before us.

It is to be observed that neither the Attorney General of Alabama nor the Solicitor of the Eleventh Judicial Circuit of the State appear to have been charged by law with any special duty in connection with the act of February 9, 1895. In support of the contention that the present suit is not one against the State, reference was made by counsel to several cases, among which were *Poindexter* v. *Greenhow*, 114 U. S. 270; *Allen* v. *Baltimore & Ohio Railroad*, 114 U. S. 311; *Pennoyer* v. *McConnaughy*, 140 U. S. 1; *In re Tyler*, 149 U. S. 164; *Reagan* v. *Farmers' Loan and Trust Co.*, 154 U. S. 362, 388; *Scott* v. *Donald*, 165 U. S. 58, and *Smyth* v. *Ames*, 169 U. S. 466. Upon examination it will be found that the defendants in each of those cases were officers of the State, specially charged with the execution of a state enactment alleged to be unconstitutional, but under the authority of which, it was averred, they were committing or were about to commit some specific wrong or trespass to the injury of the plaintiff's rights. There is a wide difference between a suit

against individuals, holding official positions under a State, to prevent them, under the sanction of an unconstitutional statute, from committing by some positive act a wrong or trespass, and a suit against officers of a State merely to test the constitutionality of a state statute, in the enforcement of which those officers will act only by formal judicial proceedings in the courts of the State. In the present case, as we have said, neither of the state officers named held any special relation to the particular statute alleged to be unconstitutional. They were not expressly directed to see to its enforcement. If, because they were law officers of the State, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the Governor and the Attorney General, based upon the theory that the former as the executive of the State was, in a general sense, charged with the execution of all its laws, and the latter, as Attorney General, might represent the State in litigation involving the enforcement of its statutes. That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the States of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons. If their officers commit acts of trespass or wrong to the citizen, they may be individually proceeded against for such trespasses or wrong. Under the view we take of the question, the citizen is not without effective remedy, when proceeded against under a legislative enactment void for repugnancy to the supreme law of the land; for, whatever the form of proceeding against him, he can make his defence upon the ground that the statute is unconstitutional and void. And that question can be ultimately brought to this court for final determination.

What has been said has reference to that part of the final decree which holds the act of February 9, 1895, to be invalid and inoperative. Whether the owners of the bridge, and the plaintiffs as their representatives, were denied by the statute

fair and reasonable compensation for the use of the property by the public, was a question that could not be considered in this case. This is not a matter to be determined in a suit against the State; for of such a suit the Circuit Court could not take cognizance.

It remains only to consider the case so far as the final decree assumes to enjoin the officers of the State from instituting or prosecuting any indictment or criminal proceedings having for their object the enforcement of the statute of 1895. We are of opinion that the Circuit Court of the United States, sitting in equity, was without jurisdiction to enjoin the institution or prosecution of these criminal proceedings commenced in the state court. This view is sustained by *In re Sawyer*, 124 U. S. 200, 209, 210. It was there said: "Under the Constitution and laws of the United States, the distinction between common law and equity, as existing in England at the time of the separation of the two countries, has been maintained, although both jurisdictions are vested in the same courts. *Fenn* v. *Holme*, 21 How. 481, 484–487 ; *Thompson* v. *Railroad Companies*, 6 Wall. 134; *Heine* v. *Levee Commissioners*, 19 Wall. 655." Again : "The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property. It has no jurisdiction over the prosecution, the punishment or the pardon of crimes and misdemeanors, or over the appointment and removal of public officers. To assume such a jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offences, or for the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative departments of the government." At the present term of the court, in *Harkrader* v. *Wadley*, 172 U. S. 148, 169, 170, we said: "In proceeding by indictment to enforce a criminal statute the State can only act by officers or attorneys, and to enjoin the latter is to enjoin the State." Again : "Much more are we of opinion that a Circuit Court of the United States, sitting in equity in the administration of civil remedies, has no jurisdiction to stay by injunction proceedings pending in a state court in the name of a State to

enforce the criminal laws of such State." Undoubtedly, the courts of the United States have the power, under existing legislation, by writ of *habeas corpus* to discharge from custody any person held by state authorities under criminal proceedings instituted under state enactments, if such enactments are void for repugnancy to the Constitution, laws or treaties of the United States. But even in such case we have held that this power will not be exercised, in the first instance, except in extraordinary cases, and the party will be left to make his defence in the state court. *Ex parte Royall,* 117 U. S. 241; *New York* v. *Eno,* 155 U. S. 89; *Whitten* v. *Tomlinson,* 160 U. S. 231; *Baker* v. *Grice,* 169 U. S. 284. But the existence of the power in the courts of the United States to discharge upon *habeas corpus* by no means implies that they may, in the exercise of their equity powers, interrupt or enjoin proceedings of a criminal character in a state court. The plaintiffs state that the toll-gatherers in their service had been indicted in a state court for violating the provisions of the act of 1895 in respect of tolls. Let them appear to the indictment and defend themselves upon the ground that the state statute is repugnant to the Constitution of the United States. The state court is competent to determine the question thus raised, and is under a duty to enforce the mandates of the supreme law of the land. *Robb* v. *Connolly,* 111 U. S. 624. And if the question is determined adversely to the defendants in the highest court of the State in which the decision could be had, the judgment may be reëxamined by this court upon writ of error. That the defendants may be frequently indicted constitutes no reason why a Federal court of equity should assume to interfere with the ordinary course of criminal procedure in a state court.

It appears from the record that Clem and Brabson were indicted in the state court under section 4151 of the Criminal Code of Alabama. Having been arrested under those indictments, they sued out, as we have seen, writs of *habeas corpus* upon the ground that they were indicted for taking tolls in violation of the above act of February 9, 1895, which they alleged to be unconstitutional, and that their arrest was in dis-

regard of the injunction of the Circuit Court restraining the institution and prosecution of indictments or other criminal proceedings in execution of that act. The Circuit Court discharged the petitioners upon their own recognizances. It was error to discharge them and thereby interfere with their trial in the state court. As already indicated, the Circuit Court, sitting in equity, was without jurisdiction to prohibit the institution or prosecution of these criminal proceedings in the state court. Further, even if the Circuit Court regarded the act of 1895 as repugnant to the Constitution of the United States, the custody of the accused by the state authorities should not have been disturbed by any order of that court, and the accused should have been left to be dealt with by the state court, with the right, after the determination of the case in that court, to prosecute a writ of error from this court for the reëxamination of the final judgment so far as it involved any privileges secured to the accused by the Constitution of the United States. *Ex parte Royall, New York* v. *Eno, Whitten* v. *Tomlinson* and *Baker* v. *Grice,* above cited. There were no exceptional or extraordinary circumstances in these cases to have justified the interference by the Circuit Court, under writs of *habeas corpus,* with the trial of the indictments found in the state courts.

> *The judgment of the Circuit Court is reversed, with directions to dissolve the injunction restraining the institution or prosecution of indictments or other criminal proceedings in the state court, to dismiss the suit brought by the receivers against the Attorney General of Alabama and the Solicitor of the Eleventh Judicial Circuit of the State, and to remand Clem and Brabson to the custody of the proper state authority.*