**R. B. PARDEN et al., Appellants,**

v.

**TERMINAL RAILWAY OF the ALA-
BAMA STATE DOCKS DEPART-
MENT et al., Appellees.**

No. 19519.

United States Court of Appeals
Fifth Circuit.

Jan. 3, 1963.

Rehearing Denied Feb. 27, 1963.

T. M. Conway, Jr., Al. G. Rives, Bir-
mingham, Ala., Rives, Peterson, Pettus
& Conway, Birmingham, Ala., of counsel,
for appellants.

Willis C. Darby, Jr., N. S. Hare, Mo-
bile, Ala., MacDonald Gallion, Atty. Gen.,
Leslie Hall, Asst. Atty. Gen., Montgom-
ery, Ala., for respondent.

Before RIVES, CAMERON and
BROWN, Circuit Judges.

CAMERON, Circuit Judge.

This appeal involves the question
whether the State of Alabama may be
sued by its citizen in a District Court
of the United States on a claim based
upon the Federal Employers Liability
Act [1] for damages for personal injuries
sustained by its citizen while employed
by a railroad belonging to the State of
Alabama which was operated as a com-
mon carrier in interstate commerce and

---

1. Title 45 U.S.C.A. § 51:

"Every common carrier by railroad
while engaging in commerce between any
of the several States * * * shall be
liable in damages to any person suffering
injury while he is employed by such car-
rier in such commerce * * * for such
injury or death resulting in whole or in
part from the negligence of any of the
officers, agents, or employees of such
carrier, or by reason of any defect or in-
sufficiency, due to its negligence, in its
cars, engines, appliances, machinery
* * * or other equipment."

Concurrent jurisdiction of actions under
the statute is conferred by 45 U.S.C.A.
§ 56 in state and federal courts.

while he was so engaged. The action [2] was brought against Terminal Railway, Alabama State Docks; and the sovereign State of Alabama, entering its appearance specially, moved to quash the return of summons on it or to dismiss the action, on the grounds that the Terminal Railway was an agency of the State, that the State had not consented to be sued or waived its immunity, and that the judicial power of the United States did not extend to this controversy because it is between a citizen of Alabama and the State of Alabama. Both motions were heard on the face of the pleadings supplemented by four affidavits and two depositions and were granted by the court below in an order stating:

"It is Ordered by the Court that the motion of the Sovereign State of Alabama to quash return of service of summons be, and the same hereby is, Granted, and

"It is Further Ordered by the Court that the motion of the Sovereign State of Alabama to dismiss the action be, and the same hereby is, Granted, with costs herein taxed against the Plaintiff."

The parties do not contend on appeal that there is any dispute about the facts, but agree that the case presents only questions of law. The basic facts are here set forth and others will be adverted to in our discussion of the several arguments:

The Terminal Railway was and is wholly owned and operated by the State of Alabama, consists of about fifty miles of railroad tracks in the area adjacent to the Alabama State Docks at Mobile, Alabama, serving in addition several industries situated in the general vicinity, and operating an interchange railroad with Alabama, Tennessee and Northern Railroad Company, Louisville and Nashville Railroad Company, Southern Railway Company, and Gulf, Mobile and Ohio Railroad Company. A large percent of its operations are in interstate commerce; and it has contracts and working agreements with the various railroad brotherhoods, and makes reports to the Interstate Commerce Commission concerning injuries sustained by its employees, and keeps its accounts so as to comply with the regulations of the Interstate Commerce Commission.

Appellant Parden argues that the owner of every common carrier by railroad engaging in interstate commerce is liable for injuries to its employees so engaged under the clear and all-embracing language of the F.E.L.A. quoted in footnote 1, supra; [3] that the State of Alabama is so liable because it operates this railroad under constitutional amendment [4] and statute; [5] and that, under the Commerce Clause of The United States Con-

---

2. Besides the action brought by R. B. Parden for personal injuries sustained July 13, 1958, four other actions were brought which involved the same jurisdictional facts as Parden's claim, varying only in the details of the facts as to liability and the injuries received. These four are: a second action filed by Parden for personal injuries sustained June 3, 1958; action by Otto Driskell alleging two injuries received by him on July 22, 1958; action by Mrs. Elizabeth W. Wiggins and Frank E. Burge, Jr., Administrators of the estate of John Irvine Wiggins, deceased, based on claims for two injuries received by him November 15, 1958 contributing to his death; and action by Aubrey E. Price claiming two separate personal injuries occurring Oct. 2, 1959,

one based upon the Federal Employers Liability Act and the second upon the Federal Safety Appliance Act, 45 U.S.C.A. § 2. The several actions were consolidated for trial in the court below and for purposes of this appeal.

The first action of R. B. Parden will be discussed in most instances, but everything herein said will have reference also to the other four civil actions.

3. And under the Federal Safety Appliance Act, Title 45 U.S.C.A. § 2, as to one of the civil actions now before us.

4. Alabama Constitution 1901, Amendments 12 and 116.

5. 1940 Code of Alabama (Recompiled, 1958) Title 38, §§ 17 and 45(14, 16).

stitution and three Supreme Court cases hereinafter considered, it is subject to and liable under F.E.L.A. and the Safety Appliance Act to the same extent as an individual.

Alabama counters with the contention that the whole sum of the judicial power granted by the Constitution to the central government does not embrace any authority in its courts to entertain a suit brought by a citizen against his own State; and that the State of Alabama has not waived its immunity from suit. The appellant responds by asserting that the general principles relied upon by the State do not apply where the State is deemed to have consented to suit; and that, since Alabama is not protected by the Eleventh Amendment to the Constitution, it is deemed to have consented by the mere fact that it entered into and conducted the operation of an interstate railroad under the statutory and organic law of the State.[6]

We do not agree that the State of Alabama, by the mere fact that it legally operated an interstate carrier, surrendered its right not to be sued, which belongs to the Union and all the States in it, except as explicitly provided otherwise in the Constitution. It is conceded that Alabama could not be sued by a citizen of another State seeking to assert the identical right claimed here. This, the appellant conceives to be a protection vouchsafed by the Eleventh Amendment which, it says, Alabama does not possess when it is sued by its own citizen. We think this attitude arises from a misunderstanding of the effect of the Eleventh Amendment and of the status of the States of the Union independent of it. This is made clear by a brief consideration of the history of the Amendment as developed in decisions of the Supreme Court.

Almost before the ink had dried on the signatures to the Constitution, a citizen of South Carolina filed suit against the State of Georgia in the Supreme Court of the United States asserting jurisdiction under Article III, Section 2, Clause 1 of the Constitution.[7] The Supreme Court[8] upheld the claimed right in a decision whose essence the syllabus sums up in these words: "A State may be sued, in the Supreme Court, by an individual citizen of another State * * *"

The people, who had just adopted a Constitution which delegated certain powers to the central government, did not agree with this construction of what they had written; and they promptly adopted the Eleventh Amendment: "The Judicial power of the United States *shall not be construed* to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens

---

6. Appellant's position is well epitomized in the following excerpts from its reply brief:

    "None of the authorities cited under this subdivision of the opposing argument hold that the judicial power of the United States does not embrace the authority to entertain a suit brought by a citizen against his own state, where the State has consented to such suit. * * *

    "We urge that it is a sound construction of the Federal Employers Liability Act, when considered in the light of Supreme Court decisions concerning the Safety Appliance Acts and the Railway Labor Act, that Congress has prohibited any entity, state or private, from engaging in business as an interstate common carrier railroad, without consenting to be sued in a United States District Court under the Federal Employers Liability Act. * * *

    "As we see it, if the Constitution of the State of Alabama authorizes the operation of this railroad, then it is subject to all the provisions of the Federal Employers Liability Act. Liability under the Act can be avoided only if the State is acting unconstitutionally by operating the Terminal Railway of Alabama State Docks."

7. "The judicial Power shall extend * * * to controversies * * * *between a State and Citizens of another State; * * * and between a State * * * and foreign States, Citizens or Subjects.*" [Emphasis added.]

8. Chisholm, Executor v. Georgia, 1793, 2 Dall. 419, 2 U.S. 419, 1 L.Ed. 440.

or Subjects of any Foreign State." [Emphasis supplied.]

The Amendment dealt solely with the prepositional phrases—"between a State and Citizens of another State" and "between a State * * * and foreign States, Citizens or Subjects"—being cast in the precise words of those phrases. And it dealt with the *construction* of those phrases only, stating without equivocation that the grant of power was not to be construed as authorizing a citizen or subject to sue another State. It directed simply that no court considering that phrase should have the power to construe it other than as directed by the Eleventh Amendment. The Amendment did not add anything to the Constitution and did not take anything from it. It simply gave directions as to the meaning of a phrase already in the Constitution. It was definitely a limitation on the right of any court to construe that language of the Constitution in such a way as to diminish the immunity from suit which is an essential and universal attribute of sovereignty.

It was not necessary that the Amendment negate the right of a citizen to sue his own State because Article III of the Constitution, which alone deals with the federal Judiciary and defines the judicial power being delegated to the central government, nowhere mentions or hints at a case or controversy between a State and its own citizens as being justiciable by any court. As against its own citizens, therefore, a State did not need and has never needed the shelter or protection of the Eleventh Amendment.

It was almost a century after Chisholm v. Georgia and the Eleventh Amendment before the Supreme Court was faced with a suit brought by a citizen against his own State, Hans v. Louisiana, 1890, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842. Jurisdiction in the Circuit Court was claimed under Article III of the Constitution, which declares that "the judicial power of the United States shall extend to all cases in law and equity arising under this Constitution, the laws of the United States and treaties made

* * *," and the Act of March 3, 1875, 18 Stat. 470, c. 137, § 1, now 28 U.S.C.A. § 1331(a), vesting in the Circuit Courts jurisdiction "of all suits of a civil nature at common law or in equity, * * * arising under the Constitution or laws of the United States, or treaties made * * *." The lower court dismissed the suit and the Supreme Court affirmed without a dissent.

The opinion analyzes thoroughly the decision in Chisholm v. Georgia, the Eleventh Amendment, and the debates among the writers of the Constitution, and, in addition, those between Mason and Patrick Henry on one side and Madison and Marshall on the other, in the Virginia Convention. It quotes from Madison: "Its jurisdiction [the Federal jurisdiction] in controversies between a State and citizens of another State is much objected to, and perhaps without reason. It is not in the power of individuals to call any State into court. The only operation it can have is that, if a State should wish to bring a suit against a citizen, it must be brought before the Federal Court;" and from Marshall: "With respect to disputes between a State and the citizens of another State, its jurisdiction has been decried with unusual vehemence. I hope that no gentleman will think that a State will be called at the bar of the Federal Court * * *. It is not rational to suppose that the sovereign power should be dragged before a court. The intent is to enable States to recover claims of individuals residing in other States * * *." And it characterizes the contention that the passage of the Eleventh Amendment had the effect of leaving a State open to suit by its own citizens in cases arising under the Constitution or laws of the United States as "* * * supposition * * * almost an absurdity on its face." [134 U.S. pp. 14 and 15, 10 S.Ct. 507.]

After quoting from a statement by Chief Justice Taney in Beers et al. v. Arkansas, 20 How. 527, 529, 15 L.Ed. 991: "It is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own

courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege and permit itself to be made a defendant in a suit by individuals, or by another State. And as this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, * * *" the opinion states its conclusion thus:

> "It is not necessary that we should enter upon an examination of the reason or expediency of the rule which exempts a sovereign State from prosecution in a court of justice at the suit of individuals. This is fully discussed by writers on public law. It is enough for us to declare its existence. * * *"

This decision in Hans v. Louisiana has been cited as authority by the Supreme Court in approximately thirty cases.[9]

This line of cases constitutes a continuing affirmation by the Court of the basic principle that the federal judicial system is one of enumerated powers, not of enumerated limitations upon power. The lack of power in the court below, therefore, to entertain a suit by the individual against the State is not dependent upon the negative language of the Eleventh Amendment, which merely points out that such power is not given, but on the basic fact that such power is not lodged in the federal judiciary under our constitutional system.

■ It is clear, therefore, that a State has the same constitutional immunity from suit by its own citizens as it has in suits brought against it by citizens of other States, and the courts will apply the same tests in determining whether the State has waived its immunity against its own citizen as it would apply if the suit were by a citizen of another State.

■■ The Ford Motor Company case, supra, stands for the well settled rule that waiver by a State of its sovereign immunity must be clearly shown, and that whether such a waiver has been established presents a question to be decided under State law (323 U.S. pp. 466–470, 65 S.Ct. 351). And cf. Louisiana Land and Exploration Co. v. State Mineral Board, 5 Cir., 1956, 229 F.2d 5, certiorari denied, 351 U.S. 965, 76 S.Ct. 1029, 100 L.Ed. 1485.

The Supreme Court of Alabama considered the provisions of the Alabama Constitution and statutes involved in the case before us in State Docks Commission v. Barnes, 1932, 225 Ala. 403, 143 So. 581. It was there decided that a claim for the death of one of the employees of the State Docks Commission was a claim against the State, which was "performing a business or corporate power and not a governmental function." Continuing, the court said (page 582):

> "But section 14 of the Bill of Rights of the Alabama Constitution provides that the state shall never be made a defendant in any court of law or equity. The state cannot consent to such a suit. This means not only that the state itself may not be sued, but that this cannot be indirectly accomplished by suing its officers or agents in their official capacity, when a result favorable to plaintiff would be directly to affect the financial status of the state treasury. * * *"

> "The right * * * to sue a State, in either a federal or a state court, cannot be derived from the Constitution or

9. E. g., Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389; Great Northern Life Ins. Co. v. Read, Ins. Comm., 1944, 322 U.S. 47, 51, 64 S.Ct. 873, 88 L.Ed. 1121; Monaco v. Mississippi, 1934, 292 U.S. 313, 322, 54 S.Ct. 745, 78 L.Ed. 1282; Williams v. United States, 1933, 289 U.S. 553, 575, 53 S.Ct. 751, 77 L. Ed. 1372; Ex parte State of New York, 1921, 256 U.S. 490, 497, 41 S.Ct. 588, 65 L.Ed. 1057; Duhne v. New Jersey, 1920, 251 U.S. 311, 313, 40 S.Ct. 154, 64 L.Ed. 280; Palmer v. Ohio, 1918, 248 U.S. 32, 34, 39 S.Ct. 16, 63 L.Ed. 108; Ex parte Young, 1908, 209 U.S. 123, 150, 28 S.Ct. 441, 52 L.Ed. 714.

laws of the United States. It can come only from the consent of the State. Beers for Use of Platenius v. Arkansas, 20 How. 527, 15 L.Ed. 991; Memphis & C. R. Co. v. Tennessee, 101 U.S. 337 [25 L.Ed. 960]; Hans v. Louisiana, 134 U.S. 1 [10 S.Ct. 504, 33 L.Ed. 842]." So says the Supreme Court in Palmer et al. v. State of Ohio, 1918, 248 U.S. 32, 39 S.Ct. 16, 63 L.Ed. 108. And it is not contended that Alabama has given its express consent, but, on the contrary, its Supreme Court has held that it cannot so consent.

It is pertinent to mention that the State of Alabama has provided payment for injury to or death of any employee of the agency here involved "where in law, justice or good morals the same should be paid;" and that the remedy so provided is characterized by the Supreme Court as "a workmen's compensation law for State employees," State Board of Adjustment v. Lacks, 1945, 247 Ala. 72, 22 So.2d 377; and cf. Hawkins v. State Board of Adjustment, 1942, 242 Ala. 547, 7 So.2d 775.

It remains but to consider the three Supreme Court cases upon which appellant bases his chief reliance. The appellant frankly points out that none of the cases are applicable on their facts, but contends that some of the language found in the opinions warrants the assumption that, by operation of law, Alabama necessarily waived its immunity from suit by electing to operate a common carrier engaged in interstate commerce. The language of each of the cases is, of course, limited to the facts with which the Court was dealing.

In United States v. California, 1936, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567, it was claimed that § 6 of the Safety Appliance Act vested jurisdiction in the district court to entertain the suit by the United States for a statutory penalty imposed for violation of the Act. The application of the decision of the Supreme Court in that case, insofar as it has possible relation to the question before us, is thus pinpointed at page 187, at page 425 of 56 S.Ct.:

"Article III, § 2 of the Constitution extends the judicial power of the United States and the original jurisdiction of the Supreme Court to cases 'in which a state shall be a party.' * * * But Congress may confer on inferior courts concurrent original jurisdiction of such suits. * * * Section 233 of the Judicial Code, 28 U.S.C., 341 * * * gives to this Court 'exclusive jurisdiction of all controversies of a civil nature where a state is a party, except between a state and its citizens or between a state and citizens of other states or aliens.'"

The Court then goes on to decide that the later enacted § 6 of the Safety Appliance Act provides that the penalty which it imposes supersedes, for practical reasons, the provisions of the Judicial Code and, therefore, vests in the district court jurisdiction to recover the penalty against the State. The power to maintain the suit against the State is specifically vested by the Constitution in the United States. The case does not hint that an individual in whom the Constitution does not vest such a power could maintain such a suit against a State.

The action in California v. Taylor, et al., 1957, 353 U.S. 553, 77 S.Ct. 1037, 1 L.Ed.2d 1034, was brought by five employees of the State Belt Railroad operated by the Board of State Harbor Commissioners of California against the ten members of the National Railroad Adjustment Board, First Division, and its Executive Secretary. The United States, answering on behalf of the Board, supported the charges in the complaint that the Belt Road was governed by the Railway Labor Act of 1926 rather than by the Civil Service Laws of the State of California. The State of California intervened as a party defendant and opposed the claim of the employees of the Belt Railroad in which they sought to invoke the machinery of the Railway Labor Act. The Supreme Court held that the operation of the Belt Railroad was covered by the Railway Labor Act, and referred to the fact that several State

courts, including an intermediate appellate court of California,[10] had held state owned belt railroads such as the ones here involved subject to the Federal Employers Liability Act. Following its decision in United States v. California, supra, the Supreme Court held that Congress had the right to regulate the California Belt Railroad's employment relationships. In Note 16, page 568, 77 S.Ct. page 1046, however, the Supreme Court stated:

> "The contention of the State that the Eleventh Amendment to the Constitution of the United States would bar an employee of the Belt Railroad from enforcing an award by the National Railroad Adjustment Board in a suit against the State in a United States District Court under § 3, First (p) of the Act is not before us under the facts of this case."

This statement by the Supreme Court disposes of the contention of the appellants that this case is authority for the contention that Alabama had waived its immunity from suit.

Petty v. Tennessee-Missouri Bridge Commission, 1959, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804, involved the question whether Tennessee and Missouri had waived their immunity to be sued when those States entered into a compact, with Congressional approval, for the construc-tion of a bridge over the Mississippi River. To build and manage the bridge, there was created the Tennessee-Missouri Bridge Commission, a "body corporate and politic," wherein it was provided that the Commission had the power "to contract, to sue and be sued in its own name." The Court, after noting that "The conclusion that there has been a waiver of immunity will not be lightly inferred. Murray v. Wilson Distilling Co., 213 U.S. 151, 171 [29 S.Ct. 458, 53 L.Ed. 742]," decided that, under the facts of that case and "where the waiver is, as here, claimed to arise from a compact between several States," the Commission was suable under the sue-and-be-sued clause interpreted in the light of the conditions attached by Congress in approving the bridge over the navigable stream.[11] We think that the case is not authority for the waiver claimed here, and refer to the language used by this Court in McDermott & Co. v. Department of Highways, State of Louisiana.[12]

Based upon the authorities cited and the foregoing reasons, we hold that the State of Alabama is constitutionally immune from suit under the facts before us and that there has been no waiver of this immunity. The judgments entered in the captioned case and the others consolidated with it by order of the court below are

Affirmed.

10. Maurice v. State, 1941, 43 Cal.App.2d 270, 110 P.2d 706.

11. In a footnote, Mr. Justice Frankfurter, dissenting (359 U.S. page 289, 79 S.Ct. page 794), stated the following:
  "Suit in United States v. California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567, was instituted by the United States, and jurisdiction over such an action is not within the proscription of the Eleventh Amendment. In California v. Taylor, 353 U.S. 553, 77 S.Ct. 1037, 1 L.Ed.2d 1034, the State intervened in an action brought against the National Railroad Adjustment Board, hence voluntarily submitted itself to the jurisdiction of the federal courts."

12. 5 Cir., 1959, 267 F.2d 317, 318.
  "Appellee, in its turn, citing, as settling the law to the contrary of this contention, other cases and Petty v. Tenn.-Mo. Bridge Comm., 8 Cir., 254 F.2d 857, reversed (three judges dissenting) in Petty v. Tenn.-Mo. Bridge Comm., 358 U.S. 811, 79 S.Ct. 53, 3 L.Ed.2d 55 (4–20–59) not in principle but on the sole ground that the Act of Congress approving the interstate compact had made provision for the suit there brought, urges upon us that the judgment must be affirmed.
  "This court in a case involving a collision with a bridge in Broward County, Florida [Broward County, Florida v. Wickman, 5 Cir., 195 F.2d 614], has settled it for this Circuit, as the Supreme Court in Ex parte, State of New York, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057, has for the country as a whole, that 'the immunity of a state from a suit in personam in the admiralty brought by a private person without its consent is clear.' "

JOHN R. BROWN, Circuit Judge (concurring specially).

I concur in the result and in much of the Court's opinion.

But in at least two places the Court states that "the State of Alabama is *constitutionally* immune from suit." 311 F.2d 729.[1] Apart from the Eleventh Amendment, I find nothing in the Constitution nor in the elaborate structure of the opinion in Hans v. Louisiana, 1890, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842, to support that conclusion as a matter of federal constitutional law. Sovereign immunity, threadbare as it generally is, is recognized in law. It may, as it does here, deny effectual enforcement to a clear legal right. But that does not raise this notion to the stature of a federal constitutional right.

Moreover, I think the constitutional crisis generated by Chisholm v. Georgia, 1792, 2 Dall. 419, 2 U.S. 419, 1 L.Ed. 440, refutes this Court's thesis that when it was all said and done the Eleventh Amendment " * * * did not add anything to the Constitution and did not take anything from it." 311 F.2d 730. And to the extent that Hans v. Louisiana really puts the result on the basis of the traditional immunity of a State, rather than on the obvious implications of the Eleventh Amendment, it seems clear to me that the Supreme Court did not undertake to cast it,[2] as does this Court, in terms of a Constitution of enumerated powers and the "basic fact that such power is not lodged in the federal judiciary under our constitutional system." 311 F.2d 731. This latter would, among other things, mean that *jurisdiction* would be conferred by consent (of the sovereign waiving its immunity). This certainly contradicts a basic concept of a limited federal jurisdiction.

What the case presents is the anomaly of a clear legal right without any means of effectual enforcement. Without a doubt, Alabama and its operating agencies, the Terminal Railway and Docks Department are subject to the FELA. It is even likely that its scheme of vicarious workmen's compensation constitutes an outright violation of the Act which prohibits any contract, rule, regulation or device to enable a common carrier to exempt itself from the liabilities imposed.[3]

But clear as is the legal right, invalid as is the substitute compensation pro-

---

1. See also: "It is clear, therefore, that a State has the same *constitutional* immunity from suit by its own citizens as it has in suits brought against it by citizens of other States, and the courts will apply the same tests in determining whether the State has waived its immunity against its own citizen as it would apply if the suit were by a citizen of another State." 311 F.2d 729.

2. The strongest statement in Hans in this direction is: "The truth is, that the cognizance of suits and actions unknown to the law, and forbidden by the law, was not contemplated by the Constitution when establishing the judicial power of the United States." 134 U.S. 1, 15, 10 S. Ct. 504, 507.

   The Court speaks again in terms of suits unknown to or forbidden by law in Fitts v. McGhee, 1899, 172 U.S. 516, 524, 19 S.Ct. 269, 272, 43 L.Ed. 535.

   "Is this a suit against the State of Alabama? It is true that the Eleventh Amendment of the Constitution of the United States does not in terms declare that the judicial power of the United States shall not extend to suits against a State by citizens of such State. But it has been adjudged by this court upon full consideration that a suit against a State by one of its own citizens, the State not having consented to be sued, was unknown to and forbidden by the law, as much so as suits against a State by citizens of another State of the Union, or by citizens or subjects of foreign states. Hans v. Louisiana, 134 U.S. 1, 10, 15 [10 S.Ct. 504, 1 L.Ed. 440] [33:842, 845, 847]; North Carolina v. Temple, 134 U.S. 22, [10 S.Ct. 509, 33 L.Ed. 849] [33:849]. It is therefore an immaterial circumstance in the present case that the plaintiffs do not appear to be citizens of another state than Alabama, and may be citizens of that state."

3. "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void * * *." 45 U.S.C.A. § 55.

gram, neither in the FELA nor in the Alabama statutes prescribing the physical operation of this interstate carrier is there enough material out of which to extract even the faintest notion of a waiver of that traditional immunity which Alabama painstakingly has additionally preserved by its own express constitutional provision.

The suit therefore must fall. But we should not by our discussion couched in language of a *constitutional* immunity apart from the Eleventh Amendment foreclose remedial action by Congress or, perhaps, judicial relief in its own courts at the hands of agencies of the United States Government whose statutory policy may not be thwarted by this plea.

