**The SPOKANE TRIBE OF INDIANS, Plaintiff,**

v.

**The STATE OF WASHINGTON, et al., Defendants.**

**No. CS–91–212–FVS.**

United States District Court, E.D. Washington.

Dec. 31, 1991.

---

Scott Crowell, Seattle, Wash., for Spokane Tribe of Indians.

Richard Heath, Jonathan McCoy, and Kim O'Neal, Olympia, Wash., for State of Wash.

National Indian Gaming Ass'n, amicus curiae, for Spokane Tribe of Indians.

## ORDER RE MOTION TO DISMISS

VAN SICKLE, District Judge.

BEFORE THE COURT is Defendants' Motion to Dismiss Suit, and in the alternative, To Dismiss the Individual Defendants, Ct. Rec. 9. A telephonic conference was held in this matter on October 28, 1991, and another telephonic conference was held on November 27, 1991. Scott Crowell appeared on behalf of the Spokane Tribe of Indians, and Richard Heath, Jonathan McCoy, and Kim O'Neal appeared on behalf of the State of Washington. An amicus curiae brief was filed by the National Indian Gaming Association on behalf of the Spokane Tribe of Indians. Having reviewed the record and heard from counsel, the Court GRANTS Defendants' Motion To Dismiss the Defendant State of Washington, and DENIES Defendants' Motion to Dismiss the Individual Defendants, Ct. Rec. 9.

### Procedural History

The Spokane Tribe of Indians ("Tribe") brought this action against the State of Washington ("State") for allegedly failing to negotiate in good faith with the Tribe concerning proposed gambling activities on the reservation. The Tribe is seeking enforcement of provisions of the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 *et seq.*, which require that a state negotiate with a tribe in "good faith" to establish gaming regulations within Tribal jurisdiction. The Tribe alleges federal court jurisdiction under both the Indian Gaming Regulation Act and 28 U.S.C. § 1362.

The State of Washington moves to dismiss this action for lack of jurisdiction, pursuant to Fed.R.Civ.P. 12(b), on the grounds that state sovereign immunity, as established by the Eleventh Amendment of the United States Constitution, bars this suit. In the alternative, the State moves to dismiss the individual defendants named in the complaint on the grounds that the *Ex Parte Young* doctrine does not apply to this case.

### FACTS

Congress enacted the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701

*et seq.*, in 1988 to establish a comprehensive federal regulatory system for on-reservation Indian gaming. The IGRA divides all gaming into three classes: (1) traditional forms of Indian gaming, for minimal value; (2) bingo and related forms of gaming such as pull-tabs, punch boards, lotto, tip jars, instant bingo, etc.; and (3) all other gaming, including casino games, parimutuel betting, etc. 25 U.S.C. § 2703. The IGRA requires that a tribal/state compact be drawn for regulation of Class III gaming. 25 U.S.C. § 2710(d)(1)(C).

The Spokane Tribe of Indians, a federally recognized Tribe of Indians, is a sovereign Indian nation that exercises powers of self-government through its governing body, the Spokane Business Council, pursuant to its constitution and bylaws.

The Tribe alleges that on November 14, 1988, a letter was sent to Governor Booth Gardner requesting formal negotiations to establish a tribal/state compact regarding tribal gaming. On August 7, 1989, the Tribe and the State had an initial formal negotiation session. During the next two years the negotiations continued, but without successfully arriving at a tribal/state compact. The Spokane Tribe of Indians joined a coalition of tribes in Washington State and developed a proposed universal compact. On May 13, 1991, the State rejected the proposed universal compact submitted by the Tribe.

The Tribe alleges that the State is acting in bad faith in the negotiation process and seeks remedies available under 25 U.S.C. §§ 2701 *et seq.* The IGRA includes a requirement that the states negotiate with tribes in good faith. The statute provides that:

> The United States district courts shall have jurisdiction over—
>> (i) any cause of action initiated by an Indian tribe arising from the failure of a State to enter into negotiations with the Indian tribe for the purpose of entering into a Tribal–State compact under paragraph (3) or to conduct such negotiations in good faith ...

25 U.S.C. § 2710(d)(7)(A).

If a state fails to comply with the statute by failing to negotiate in good faith, a district court can order the state to conclude a compact within a 60 day period. 25 U.S.C. § 2710(d)(7)(B)(iii). If the tribe and state fail to achieve a compact within the 60 day period, the district court can appoint a mediator who considers "the last best offer" from each side and selects one of the proposals to be the final compact. 25 U.S.C. § 2710(d)(7)(B)(iv).

In the complaint, the Tribe contends that federal court jurisdiction is established by the IGRA as well as by 28 U.S.C. § 1362. The State raises sovereign immunity, established by the Eleventh Amendment of the United States Constitution, as a bar to this action. The State contends that no exception to Eleventh Amendment sovereign immunity has been established in this case, that no federal court jurisdiction exists, and this case should be dismissed.

## DISCUSSION

■ The first basis that the Court analyzes for federal court jurisdiction is 28 U.S.C. § 1362. This section provides:

> The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1362.

In previous cases, courts, including this one, have interpreted 28 U.S.C. § 1362 as establishing federal court jurisdiction by serving as an abrogation of states' Eleventh Amendment immunity[1] when suit is brought by an Indian tribe. However, the United States Supreme Court recently reviewed the question of whether section

---

1. The Eleventh Amendment states:
   The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subject of any Foreign State.
   U.S.CONST., amend XI.

1362 establishes federal court jurisdiction, in and of itself, in *Blatchford v. Native Village of Noatak and Circle Village,* —— U.S. ——, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). In *Blatchford,* the Court determined that section 1362 "does not enable tribes to overcome ... sovereign immunity." *Blatchford v. Native Village of Noatak and Circle Village,* 111 S.Ct. at 2586 n. 5 (1991).

It appears that sovereign immunity must be overcome by a source independent of 28 U.S.C. § 1362 in order for federal court jurisdiction to be established. The same issue concerning federal court jurisdiction involving the IGRA was recently addressed by the United States District Court for the Southern District of Alabama in *Poarch Band of Creek Indians v. State of Alabama, et. al,* 776 F.Supp. 550 (1991). The *Poarch* court fully analyzed each of the possible exceptions to the sovereign immunity bar: waiver of immunity through consent; Congressional abrogation of immunity; and the *Ex parte Young* doctrine and concluded that none of the exceptions applied in that case. *Poarch Band of Creek Indians v. Alabama,* 776 F.Supp. at 553. This Court also analyzes the same possible exceptions.

### a. Express Consent

The Supreme Court of the United States has determined that one way that a state may lose its immunity is to expressly consent to suit in federal court. *Id.* at 554; *Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 882–83, 27 L.Ed. 780 (1883). In this case, express consent to suit by the state of Washington is not argued, nor is there a basis to find the State has consented to be sued.

### b. Congressional Abrogation

■ In *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976),

the Supreme Court determined that another way that the sovereign immunity bar is removed occurs when Congress abrogates a state's Eleventh Amendment sovereign immunity through legislation, pursuant to Section 5 of the Fourteenth Amendment. *Fitzpatrick* at 456, 96 S.Ct. at 2671. The Supreme Court has also determined that Congress may abrogate a state's sovereign immunity when acting pursuant to the Interstate Commerce Clause. *Pennsylvania v. Union Gas,* 491 U.S. 1, 12, 109 S.Ct. 2273, 2280, 105 L.Ed.2d 1 (1989). In *Dellmuth v. Muth,* 491 U.S. 223, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989), the Court emphasized that Congress' intent to abrogate the States' sovereign immunity must be "unmistakably clear in the language of the statute." *Dellmuth v. Muth,* 491 U.S. at 226, 109 S.Ct. at 2399 (quoting *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985)).

The Tribe argues that Congress used "unmistakably clear" language to abrogate States' sovereign immunity in the Indian Gaming Regulatory Act, which Congress enacted pursuant to the Indian Commerce Clause. The issue before this Court is whether Congress may properly abrogate States' sovereign immunity when acting pursuant to the Indian Commerce Clause.[2]

The first step in the analysis is to determine whether a significant difference exists between Congressional powers arising from the Indian Commerce Clause and Congressional powers arising from the Interstate Commerce Clause.[3] The United States Supreme Court noted in *Cotton Petroleum v. New Mexico,* 490 U.S. 163, 109 S.Ct. 1698, 104 L.Ed.2d 209 (1989):

It is also well established that the Interstate Commerce and Indian Commerce Clauses have very different applications.

---

**2.** The parties have not cited cases to the Court, nor has the Court found cases through its own research, that indicate that either the United States Supreme Court or the Court of Appeals for the Ninth Circuit has ruled on whether Congress has the authority, pursuant to the Indian Commerce Clause, to abrogate States' sovereign immunity.

**3.** Both the Indian Commerce Clause and the Interstate Commerce Clause are found in Article I, section 8 of the United States Constitution, which gives Congress the power "[t]o regulate commerce with foreign nations, and among the several States, and with the Indian tribes." U.S. Const. Art. I, § 8.

In particular, while the Interstate Commerce Clause is concerned with maintaining free trade among the States even in the absence of implementing federal legislation [citation omitted], the central function of the Indian Commerce Clause is to provide Congress with plenary power to legislate in the field of Indian affairs [citation omitted]. The extensive case law that has developed under the Interstate Commerce Clause, moreover, is premised on a structural understanding of the unique role of the States in our constitutional system that is not readily imported to cases involving the Indian Commerce Clause. Most notably ... [it is] inappropriate to apply Commerce Clause doctrine developed in the context of commerce "among" States with mutually exclusive territorial jurisdiction to trade "with" Indian tribes.

*Cotton Petroleum v. New Mexico*, 490 U.S. at 192, 109 S.Ct. at 1716. The *Cotton Petroleum* Court concluded that it was inappropriate to apply theories from one of the commerce clauses to the other. *Id.* at 193, 109 S.Ct. at 1716.

The Supreme Court in *Blatchford* noted an important difference in the relationship between sister States in the Interstate Commerce Clause and the relationship between States and Indian Tribes in the Indian Commerce Clause. That difference is that States have surrendered immunity to each other, creating a "mutuality of concession," but Indian Tribes have retained immunity to suits by States, so no mutuality of concession exists. *Blatchford v. Native Village of Noatak*, — U.S. —, 111 S.Ct. 2578, 2583, 115 L.Ed.2d 686 (1991). As the Court expressed in *Blatchford*, "What makes the States' surrender of immunity from suit by sister States plausible is the mutuality of that concession." *Id.* at 2582. Since the Tribes have retained their immunity from suit by the States, the Court reasoned that the States have retained their immunity from suit by Indian Tribes. *Id.* at 2583.

■ After reviewing the *Blatchford* and *Cotton Petroleum* decisions in relationship to the other case law available, this Court

concludes that a significant difference exists between Congressional power stemming from the Indian Commerce Clause and Congressional power stemming from the Interstate Commerce Clause. There is no basis for this Court to conclude that Congress has the authority to abrogate States' Eleventh Amendment sovereign immunity to suits from Indian Tribes by enacting legislation pursuant to the Indian Commerce Clause. Having determined that Congress did not have the authority to abrogate the States' sovereign immunity in the Indian Gaming Regulatory Act, it is not necessary to address whether Congress used "unmistakably clear" language in an attempt to abrogate States' immunity.

Without an effective abrogation of sovereign immunity, this Court does not have jurisdiction over this suit against the State of Washington under either 28 U.S.C. § 1362 or 25 U.S.C. § 2710. Therefore, the Court GRANTS the Defendant State of Washington's Motion to Dismiss the State of Washington, based on the Eleventh Amendment sovereign immunity bar to suit in federal court.

### c. *Ex parte Young* Doctrine

■ The Court next addresses the second issue presented in Defendants' motion: whether, absent federal court jurisdiction over the Defendant State of Washington, this Court has jurisdiction over the individual defendants named in this suit.

The Supreme Court of the United States established in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), that the Eleventh Amendment does not act as a bar to a suit in federal court to enjoin state officials from acting in violation of the Constitution or of federal laws. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

The Court further narrowed the application of the *Ex parte Young* doctrine in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In *Edelman*, the Court determined that the Eleventh Amendment serves as a bar to retroactive benefits because the benefits would have to come from the State, and thus, the State

would be the real party in interest. *Edelman v. Jordan,* 415 U.S. at 667–68, 94 S.Ct. at 1357–58. The Court noted that a federal court's remedial power under the *Ex parte Young* doctrine is limited to prospective injunctive relief and could not include a retroactive award that would require expenditure of State funds. *Id.* at 677, 94 S.Ct. at 1362.

The Supreme Court's concern regarding whether State funds are involved relates to whether the State, or the officer of the State, is the "real, substantial party in interest." *Ford Motor Co. v. Dept. of Treasury of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). When the State is the "real, substantial party in interest," the Eleventh Amendment bars the suit, even if state officials are named as defendants rather than the State. *Id.*

The Supreme Court has noted that when a plaintiff sues a state official alleging violation of federal or Constitutional laws, the federal court may grant an injunction to govern the future conduct of the official, even though the court cannot award retroactive monetary relief. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 102–03, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984). However, as the Court stated in *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), when monetary relief is "ancillary" to the injunctive relief awarded in a case against an official, then the monetary relief is not barred by the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 169 n. 17, 105 S.Ct. 3099, 3093 n. 17, 87 L.Ed.2d 114 (1985).

In this case the Plaintiff Tribe has alleged that Defendant Booth Gardner, Governor, and Defendant Frank Miller, Deputy Director of the Washington State Gambling Commission, have violated a federal law, by not negotiating with the Tribe in good faith, as required by IGRA, 25 U.S.C. § 2710. The Tribe contends that under *Ex parte Young,* the individual defendants named are not barred from suit in federal court by the Eleventh Amendment. This Court agrees with Plaintiff's contention.

The Tribe is seeking a declaratory judgment that the Defendants have failed to negotiate with the Tribe in good faith. In addition, the Tribe is seeking a mandate ordering the Defendants to comply with IGRA, 25 U.S.C. § 2710(d)(7)(B)(iv), and conclude a tribal/state compact governing the conduct of Class III gaming activities on Spokane Indian lands within a sixty day period from the date of the Order or be subject to a mediator's resolution of any impasse. Clearly, such remedies are available against state officials under *Edelman,* which allows for "prospective injunctive relief" governing officials' future conduct. *Edelman v. Jordan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974).

The State contends that the *Ex parte Young* doctrine does not apply in this case because the relief sought by the Tribe would be an impermissible infringement on the exercise of discretion on the part of the state officials. In support of their contention, the Defendants quote *Ex parte Young*:

> There is no doubt that the court cannot control the exercise of the discretion of an officer. It can only direct affirmative action where the officer having some duty to perform not involving discretion, but merely ministerial in its nature, refuses or neglects to take such action. In that case the court can direct the defendant to perform this merely ministerial duty.

*Ex parte Young,* 209 U.S. 123, 158, 28 S.Ct. 441, 453, 52 L.Ed. 714 (1908). The Defendants argue that the type of relief sought by the Plaintiff Tribe, that is a request for a declaratory judgment that the State has not negotiated in good faith and an injunction requiring the State to negotiate in good faith, affect the exercise of discretionary power that lies outside of the boundaries of the *Ex parte Young* legal fiction.

The Court is concerned that a request to enjoin Defendants to "negotiate in good faith" may infringe on executive discretion regarding negotiation with the Tribe.[4]

---

4. As the Court considers Defendants' argument     that the *Ex parte Young* fiction does not apply

However, the Court also is concerned that failure to assert jurisdiction will deprive the Tribe of a forum in which to present its contentions. In balancing these competing concerns the Court determines that the potential intrusion into State executive discretion in this case is outweighed by the actual total deprivation of a forum for the Tribe to address its grievances.

The Court concludes that the Plaintiff Tribe's requested remedy of prospective injunctive relief would not require unwarranted judicial interference into executive discretion. The Court concludes that the Plaintiff Tribe's complaint against the individual defendants falls directly within the parameters set by *Ex parte Young*, because the Tribe is seeking a method to establish jurisdiction to require State officials to comply with a federal statute. By applying the *Ex parte Young* rationale to this case, the Court concludes that federal court jurisdiction has been established against the individual defendants, Governor Gardner and Deputy Director Miller. Defendants' Motion To Dismiss the Individual Defendants from this case is DENIED.

IT IS HEREBY ORDERED: Defendants' Motion to Dismiss the State of Washington is granted and, in the alternative, Defendants' Motion to Dismiss the Individual Defendants is denied. The Motion, Ct. Rec. 9, is Granted in part and Denied in part.

IT IS SO ORDERED. The Clerk is hereby directed to enter this Order, furnish copies to counsel, and dismiss the State of Washington.

---

to discretionary acts, two perplexing issues arise: whether the Court's assertion of federal court jurisdiction in this matter would be an unwarranted judicial interference into executive discretion; or whether the Court's refusal to assert federal court jurisdiction in this matter would deprive the Tribe of any practical forum for their grievance. The Court seriously considers the issue of judicial interference of executive discretion, which has been raised in various

contexts. *See, e.g.,* John P. Dwyer, *Pendent Jurisdiction and the Eleventh Amendment.* 75 Calif.L.Rev. 129, 149 (1987) (citing Martin H. Redish, *Federal Jurisdiction: Tensions in the Allocation of Judicial Power* 319 (1980); Kevin C. Mulder, *The Extension of Comity: Fair Assessment in Real Estate Association v. McNary,* 32 Am.U.L.Rev. 1123, 1133 (Summer 1983); Ruth Colker, *Administrative Prosecutorial Indiscretion,* 63 Tul.L.Rev. 877, 899–900 (1989)).