**SAULT STE. MARIE TRIBE OF CHIPPEWA INDIANS et al., Plaintiffs,**

v.

**STATE of Michigan, Defendant.**

**No. 1:90–CV–611.**

United States District Court, W.D. Michigan, S.D.

March 26, 1992.

Bruce Richard Greene, Greene, Meyer & McElroy, PC, Boulder, Colo., Daniel T. Green, Sault Ste Marie Tribe of Chippewa Indians, Sault Ste Marie, Mich., John F. Petoskey, GTB Economic Development Authority, Suttons Bay, Mich., William Rastetter, Cedar, Mich., Joseph P. O'Leary, Keweenaw Bay Indian Community Tribal Center, Baraga, Mich., Michael C. Parish, Dawn S. Duncan, Hannahville Indian Community, Wilson, Mich., Anthony E. Andary, Andary & Andary, PC, Sault Ste. Marie, Mich., James A. Bransky, Michigan Indian Legal Services, Traverse City, Mich., for plaintiffs.

Keith D. Roberts, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Corrections Div., Lansing, Mich., Nelson W. Westrin, Asst. Atty. Gen., for defendant.

## OPINION

BENJAMIN F. GIBSON, Chief Judge.

Pending before this Court is a motion to dismiss made by defendant State of Michigan. The state claims that this suit is barred by the Eleventh Amendment of the United States Constitution.

## I.

This suit is brought under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701 *et seq.*, which was enacted "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency and strong tribal government." 25 U.S.C. § 2703(1). The statute allows states and Indian tribes to enter compacts through which to govern gaming activities. The statute sets up a classification scheme by which the tribes and the state regulate gaming.

The statutory scheme gives authority to tribes and states to regulate gaming based upon the type of game being played. Traditional Indian games played at pow wows or ceremonials for minimal prizes (Class I gaming) is exclusively regulated by the tribe. Games such as bingo, games similar to bingo, and certain card games (Class II gaming) are regulated by the tribe but subject to the jurisdiction of the National Indian Gaming Commission, a federal agency created under the Act. Class III games, which include all other games, are only lawful if they are authorized by tribal resolution approved by the Chairman, located in a state that permits such gaming for any purpose by any person, and conducted pursuant to the terms of a Tribal–State compact.

Any tribe seeking to permit Class III gaming must first negotiate with the state and enter into a compact with it. 25 U.S.C. § 2710(d)(3)(A). The Act requires that the state act in good faith in negotiating the compact. *Id.* The statute gives federal district courts jurisdiction over litigation initiated by the tribe against a state for failure to negotiate in good faith. 25 U.S.C. § 2710(d)(7)(A)(i). The statute gives federal courts authority, upon a finding that states have failed to negotiate in good faith, to order the parties to conclude a compact within 60 days. 25 U.S.C. § 2710(d)(7)(B)(iii). If the parties are unable to do so, the court must then appoint a mediator to select a compact which becomes the governing compact between the parties if the state consents in sixty days.

25 U.S.C. § 2710(d)(7)(B)(iv)–(vi). If the state does not consent, then the Secretary of the Interior, in consultation with the tribe, must determine how gaming will be regulated on Indian lands. 25 U.S.C. § 2710(d)(7)(B)(vii).

The plaintiffs in this suit are six federally recognized Indian tribes within the State of Michigan. These tribes operated casinos on their reservations before IGRA was passed. The proceeds from the casinos have been used by their tribal governments. Plaintiffs claim that the tribes contacted then Governor Blanchard within thirty days of the passage of IGRA and requested that the state enter into negotiations for a Tribal–State gaming compact. Negotiations took place between August of 1989 and May of 1990. Negotiations subsequently broke down, and no compact was ever concluded. Plaintiffs claim that the major issue of contention between the parties was whether electronic or electromechanical facsimiles of games of chance (video games) could properly be regulated under the compact.

The plaintiffs assert two claims. First, they argue that the state failed to fulfill its obligation to negotiate in good faith for the purpose of entering a Tribal–State compact. Second, they assert that video games are Class III games which may be included under the Tribal–State compact under the express terms of IGRA. The plaintiffs ask for a declaratory ruling that Michigan has failed to negotiate in good faith and for an order directing the parties to conclude a compact within 60 days and appointing a mediator. Plaintiffs also request a declaratory ruling that video games are games "permitted in the State of Michigan by any person for any purpose, within the meaning of the IGRA." Complaint at 8.

## II.

■ The Eleventh Amendment of the United States Constitution states as follows:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States

by Citizens of another State, or by Citizens or Subjects of any Foreign state. The Eleventh Amendment, as interpreted by the Supreme Court, bars suits against a state government by citizens of another state or citizens of a foreign country. *Fitts v. McGhee,* 172 U.S. 516, 19 S.Ct. 269, 43 L.Ed. 535 (1899). It also bars suits against a state by its own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The Supreme Court has explained that the philosophy behind the Eleventh Amendment is "that the States entered the federal system with their sovereignty intact; that the judicial authority in Article III is limited by this sovereignty." *Blatchford v. Noatak,* —— U.S. ——, ——, 111 S.Ct. 2578, 2581, 115 L.Ed.2d 686 (1991).

There are several situations in which courts have found that traditional principles of sovereign immunity do not prohibit suits. First, the Supreme Court has found that states may waive sovereign immunity through express legislative enactments demonstrating intentional relinquishment of the state's immunity. *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974); *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 882, 27 L.Ed. 780 (1883). The Court has also found that in limited circumstances sovereign immunity may be constructively waived. Constructive waivers have been disfavored by the Court. *See Edelman v. Jordan,* 415 U.S. 651, 653, 94 S.Ct. 1347, 1351, 39 L.Ed.2d 662 (1974) (stating that "constructive consent is not a doctrine commonly associated with the surrender of constitutional rights and we see no place for it here"). The only time a constructive waiver may exist is if congress clearly indicates an intent to impose liability on a state if it engages in a particular activity and the state nonetheless chooses voluntarily to engage in the conduct. The congressional determination that states should be made liable must be expressed in unmistakably clear language. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 243, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985). Finally, Con-

gress may, in certain situations—such as when legislating pursuant to the enforcement provisions of Section Five of the Fourteenth Amendment, abrogate the Eleventh Amendment without a state's consent if it does so in clear and unequivocal language. *Dellmuth v. Muth,* 491 U.S. 223, 228, 109 S.Ct. 2397, 2400, 105 L.Ed.2d 181 (1989); *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976).

### III.

Jurisdiction in this suit rests upon Title 28 United States Code Section 1362 and Title 25 United States Code Section 2710(d)(7)(A)(i). Defendant argues that these sections, while providing the Court with jurisdiction over the claims, do not abrogate the state's traditional immunity from suit under the Eleventh Amendment. The Supreme Court recently conclusively determined that Title 28 United States Code Section 1362 did not operate as an abrogation of a state's Eleventh Amendment immunity. *Blatchford v. Noatak,* —— U.S. ——, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). The only question for this Court to resolve is whether the IGRA itself overrides sovereign immunity either as an express Congressional abrogation or as a constructive state waiver of immunity.

Plaintiffs forward three arguments to support their contention that the Eleventh Amendment is not a bar to this suit. First, they argue that Michigan constructively consented to be sued, under the "plan of the convention," whenever Congress legislates pursuant to the Indian Commerce Clause. Second, plaintiffs argue that Congress abrogated the state's immunity by acting pursuant to the Indian Commerce Clause. Third, plaintiffs argue that Congress abrogated the state's immunity by acting pursuant to the Interstate Commerce Clause. The Court addresses each of these arguments *seriatim.*

### A.

It is not argued that the State of Michigan has expressly consented to be

sued under the IGRA. Plaintiffs contend, instead, that such waiver is implicit in the plan of the convention. Plaintiffs base this argument on two Supreme Court cases which hold that when the states joined the Union, they surrendered certain elements of their sovereignty. These cases hold that state sovereignty cannot be used to prohibit Congress from regulating interstate commerce because the states ceded this power to Congress by adopting the Constitution. *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 5, 109 S.Ct. 2273, 2276, 105 L.Ed.2d 1 (1989); *Parden v. Terminal R. of Alabama Docks Dep't,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). Plaintiffs urge that just as the states relinquished their authority and subjected themselves to suit when Congress regulates under the Interstate Commerce Clause, so too have they relinquished their immunity when Congress legislates pursuant to the Indian Commerce Clause.

In *Blatchford,* the Supreme Court considered whether states waived their immunity against Indian tribes when adopting the Constitution and concluded that there was no such surrender of immunity. *Blatchford,* —— U.S. ——, 111 S.Ct. at 2582. The issue before the *Blatchford* Court was slightly different than that which plaintiffs present to this Court. In *Blatchford,* the Court was determining whether, by adopting the Constitution, the states had generally surrendered their immunity to suits by Indian tribes; the Court did not consider whether the states had agreed to the surrender of sovereign immunity when Congress legislated pursuant to the Indian Commerce Clause. Nevertheless, the Supreme Court's conclusion that states did not surrender their immunity *vis-a-vis* Indian tribes strongly influences this Court's determination that the Indian Commerce Clause does not effect an implicit waiver of immunity.

The *Blatchford* decision rested, in part, on a lack of mutuality of immunity. The Court held that the reason sister states were found to have surrendered immunity from suits by one another is that the concessions were mutual. *Id.* The Court noted that Indian tribes were immune from suits by states and that, "if the convention could not surrender *the tribes'* immunity for the benefit of the *States,* we do not believe that it surrendered the States' immunity for the benefit of the tribes." *Id.* at ——, 111 S.Ct. at 2583. Such reasoning applies to suits by tribes arising under legislation enacted pursuant to the Commerce Clause as well as to other types of suits by tribes. This Court thus finds that there was no implicit surrender of immunity in the plan of the convention.[1]

### B.

A far more difficult issue before this Court is whether Congress has abrogated Michigan's Eleventh Amendment Immunity. The relevant jurisdictional provision of the IGRA states:

> The United States district courts shall have jurisdiction over—(i) any cause of action initiated by an Indian tribe arising from the failure of a State to enter into negotiations with the Indian tribe for the purpose of entering into a Tribal–State compact under paragraph (3) or to conduct such negotiations in good faith....

25 U.S.C. § 2710(d)(7)(A)(i). The statute goes on to place the burden of proof upon the state to determine whether it has negotiated in good faith to conclude the compact. 25 U.S.C. § 2710(d)(7)(B)(ii). Unlike Title 28 United States Code Section 1362 which the Supreme Court held merely conferred jurisdiction without indicating that state immunity was to be waived, the IGRA demonstrates specific Congressional intent that *states* be subject to suit in fed-

---

1. Plaintiffs also argue that as states have no inherent jurisdiction over Indian affairs, they act pursuant only to the authority delegated to them by Congress. Plaintiffs argue that this is especially true under the IGRA since the Secretary of the Interior oversees the formation and enforcement of the Tribal–State compacts. Plaintiffs argue that states are acting as delega-

tees of the federal government and not as states, and thus have no sovereign immunity. This argument is unpersuasive. Congress has merely given states authority to enter negotiations which it normally would not have. The state is not acting as a delegatee of the federal government as it is the state's rules and policies which control the scope of the compact.

eral courts based upon violations of IGRA. This Court finds that the Act is a clear statement of waiver of sovereign immunity. The Court's analysis, however, cannot stop here.

The Supreme Court has found Congressional power to abrogate state sovereign immunity only in certain situations. One is when Congress is legislating under Section Five of the Fourteenth Amendment. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). The other is when Congress is legislating pursuant to its Interstate Commerce Clause powers. *Pennsylvania v. Union Gas Company,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989). This Court must determine whether this legislation presents another instance in which Congress may abrogate state immunity.

Plaintiffs contend that Congress has the power to abrogate state immunity under the Indian Commerce Clause. Article I, Section Eight of the United States Constitution gives Congress the power "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." This clause of the Constitution is the same clause upon which the Interstate Commerce Clause exception is based. Plaintiffs claim that the same rationale applies to legislation under the Indian Commerce Clause as the Interstate Commerce Clause. Plaintiffs reason that as Congress has plenary power to regulate Indian commerce, it should be able to abrogate state immunity when using that power.

This Court notes that two other district courts have considered this issue and that both have determined that Congress does not have power to abrogate sovereign immunity when legislating pursuant to the Indian Commerce Clause. *See Poarch Band of Creek Indians v. Alabama,* 776 F.Supp. 550 (S.D.Ala.1991); *Spokane Tribe of Indians v. Washington,* 790 F.Supp. 1057 (E.D.Wash.1991). The *Poarch* decision relied on the fact that *Union Gas,* a plurality opinion written before significant changes in court personnel, rested on "shakey ground" and should be construed narrowly. *Poarch,* 776 F.Supp. at 558–59. The court then examined the case of *Cotton Petroleum,* which determined that the Indian Commerce Clause and the Interstate Commerce Clause significantly differed from each other. *Cotton Petroleum Corp. v. New Mexico,* 490 U.S. 163, 192, 109 S.Ct. 1698, 1715, 104 L.Ed.2d 209 (1989). The court concluded that the implication of *Cotton Petroleum* coupled with a narrow interpretation of *Union Gas* required the conclusion that Congress did not have abrogation powers when legislating pursuant to the Indian Commerce Clause.

The *Spokane* court also relied on *Cotton Petroleum* to determine that "a significant difference exists between Congressional power stemming from the Indian Commerce Clause and Congressional power stemming from the Interstate Commerce Clause. There is no basis for this Court to conclude that Congress has the authority to abrogate States' Eleventh Amendment sovereign immunity to suits from Indian Tribes by enacting legislation pursuant to the Indian Commerce Clause." *Spokane,* at 1061.

The Court agrees with plaintiffs' argument that *Cotton Petroleum* is inapposite as it did not deal with the issue of Congress's ability to abrogate sovereign immunity but, instead, concerned whether or not tribes should be treated as states for the purposes of tax apportionment. The Court nonetheless follows the *Poarch* and *Spokane* courts' narrow reading of *Union Gas* both because *Union Gas* was a plurality opinion and because at least part of the rationale of the *Union Gas* holding that Congress can abrogate state sovereign immunity when legislating pursuant to the Interstate Commerce Clause was that states had implicitly agreed to such regulation when forming the union. *Union Gas,* 491 U.S. at 19–22, 109 S.Ct. at 2283–2285. As discussed above, *Blatchford* holds that states did not waive immunity to suit by Indian tribes. Thus, at least one of the bases upon which *Union Gas* rests is inapplicable to this case. The Court therefore determines that it would be inappropriate

to extend *Union Gas* to apply to the Indian Commerce Clause.

### C.

██ Plaintiffs also assert that this regulation is undertaken pursuant to the Interstate Commerce Clause and is thus directly controlled by *Union Gas*. Plaintiffs contend that the declaration of policy in IGRA states that one of the purposes behind the Act was to guard against the infiltration of organized crime and other corrupting influences into tribal gaming. Plaintiffs maintain that these are the same concerns that prompted Congress to enact RICO. The Court finds this argument unpersuasive as the IGRA is clearly meant to govern relations between tribes and states and not between sister states. The statement of policy itself indicates that Congress was concerned about shielding *Indian Tribes* from organized crime. Authority to undertake such regulation is contained in the grant of power to Congress to regulate commerce of Indian tribes and not the regulation of interstate commerce.

### IV.

Plaintiffs have asked that the entire IGRA be held unconstitutional if this Court finds the suit barred by immunity as the severability clause is insufficient to save the statute. The Court does not reach this issue as plaintiffs also claim that they intend to amend their complaint to name state officials. If plaintiffs make such an amendment, this Court will have to determine whether this case can proceed under the doctrine of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Thus, consideration of the severability issue is premature at this time.

### V.

For the reasons stated above, the State of Michigan's motion to dismiss based upon the Eleventh Amendment is granted. As plaintiffs have indicated that they wish to amend their complaint to name state officials as defendants, it is in the interests of the efficient administration of justice for this Court to retain jurisdiction over this case for a reasonable time to allow it to consider such a motion to amend should it be made.