**PONCA TRIBE OF OKLAHOMA, Plaintiff,**

v.

**The STATE OF OKLAHOMA and David Walters, Governor of the State of Oklahoma, individually and in his official capacity, Defendants.**

**No. Civ.–92–988–T.**

United States District Court, W.D. Oklahoma.

Sept. 8, 1992.

Gary S. Pitchlynn, Ted Ritter, Pitchlynn, Odom & Morse, Norman, OK, for plaintiff.

Neal Leader, Office of the Atty. Gen., Oklahoma City, OK, for defendants.

### ORDER

RALPH G. THOMPSON, Chief Judge.

Plaintiff, the Ponca Tribe of Oklahoma (the "Tribe"), instituted this action against the State of Oklahoma and David Walters, both individually and in his official capacity as Governor of the State, pursuant to the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–2721. The Tribe contends the State of Oklahoma failed to conduct good-faith negotiations regarding a Tribal–State compact that would govern certain gaming activities to be conducted on the Tribe's land, and seeks an order compelling the State to conclude a compact with the Tribe. The defendants have filed a motion to dismiss, asserting that the action is barred by the State's Eleventh Amendment sovereign immunity; that the IGRA constitutes an unconstitutional interference with the State's sovereign contracting powers under the Tenth Amendment; and that no claim has been stated against the Governor in either his official or individual capacity.

The Indian Gaming Regulatory Act was passed by Congress "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments ..." 25 U.S.C. § 2702(1). The IGRA divides Indian gaming into three classes. Class I gaming includes social games for prizes of minimal value and traditional forms of Indian gaming engaged in by individuals in connection with tribal ceremonies or celebrations. 25 U.S.C. § 2703(6). Class I gaming on Indian lands is not subject to the provisions of IGRA, but is within the exclusive jurisdiction of the tribes. § 2710(a)(1). Class II gaming includes bingo, pull-tabs, punch boards, tip jars and other games similar to bingo, and certain card games. § 2703(7)(A). Class II gaming is within the jurisdiction of the Indian tribes, but is subject to the provisions of IGRA. § 2710(a)(2).

Class III gaming consists of all other forms of gaming, § 2703(8), and Class III activities are lawful on Indian lands only if they are "located in a State that permits such gaming for any purpose by any person, organization, or entity ..." and only if they are conducted in conformance with a Tribal–State compact. § 2710(d)(1)(B) and (C). IGRA specifies the procedure to be followed with respect to the formation of a compact:

[a]ny Indian tribe having jurisdiction over the Indian lands upon which a class III gaming activity is being conducted, or is to be conducted, shall request the State in which such lands are located to enter into negotiations for the purpose of entering into a Tribal–State compact governing the conduct of gaming activities. Upon receiving such a request, the State shall negotiate with the Indian tribe in good faith to enter into such a compact.

§ 2710(d)(3)(A).

The Act also provides that:

[t]he United States district courts shall have jurisdiction over ... any cause of action initiated by an Indian tribe arising from the failure of a State to enter into negotiations with the Indian tribe for the purpose of entering into a Tribal–State

compact ... or to conduct such negotiations in good faith. ...

§ 2710(d)(7)(A).

If, upon institution of a suit by a tribe, the court finds that the State has refused to negotiate in good faith, it "shall order the State and the Indian tribe to conclude such a compact within a 60–day period." § 2710(d)(7)(B)(iii). The court may consider, in determining whether the state has negotiated in good faith, the public interest, public safety, criminality, financial integrity, and adverse economic impacts on existing gaming activities. § 2710(d)(7)(B)(iii)(I).

If the State and Tribe do not conclude a compact within the sixty-day period, the Tribe and State "shall each submit to a mediator appointed by the court a proposed compact that represents their last best offer for a compact. The mediator shall select from the two proposed compacts the one which best comports with the terms of this Act and any other applicable Federal law and with the findings and order of the court." § 2710(d)(7)(B)(iv). The mediator then submits to both the State and the Indian tribe the compact he or she has selected. § 2710(d)(7)(B)(v). If the State accepts the mediator's proposed compact within sixty days after it is submitted, it will be treated as the Tribal–State compact. § 2710(d)(7)(B)(vi). If the State does not consent to the mediator's selected compact, the mediator notifies the Secretary of the Interior, who, in consultation with the Tribe, establishes procedures under which Class III gaming may be conducted on the Indian lands, which are consistent with the proposed compact selected by the mediator, the provisions of IGRA, and the relevant provisions of the laws of the State. § 2710(d)(7)(B)(vii).

The court must now determine whether the suit filed by the Ponca Tribe under IGRA against the State of Oklahoma and its Governor is barred by the Eleventh and Tenth Amendments.

### ELEVENTH AMENDMENT

 The Eleventh Amendment[1] prohibits suit against a state by a private party, including one of its own citizens, by a foreign sovereign, or by an Indian tribe. *Blatchford v. Native Village of Noatak,* —— U.S. ——, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). States may, however, waive their Eleventh Amendment immunity and consent to suit in federal court, and, in certain cases, Congress may abrogate the States' sovereign immunity. *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990).

 The defendants argue that the State of Oklahoma has neither expressly nor implicitly waived its sovereign immunity to suit. Relying on *Parden v. Terminal Railway of Alabama Docks Dept.,* 377 U.S. 184, 192–93, 84 S.Ct. 1207, 1213, 12 L.Ed.2d 233 (1964), the Tribe responds that the State "constructively waived" its immunity. *Parden* is inapplicable, as it was premised on the theory that by becoming a common carrier in interstate commerce, the State of Alabama had entered a field of economic activity that was federally regulated and had impliedly consented to be bound by that regulation and be subject to suit in federal court on the same terms as other regulated parties. *Blatchford,*[2] —— U.S. at —— – ——, 111 S.Ct. at 2585–86. Here the State has not voluntarily "[left] the sphere that is exclusively its own and enter[ed] into activities subject to congressional regulation." Id. 377 U.S. at 196, 84 S.Ct. at 1215. See *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 246–47, 105 S.Ct. 3142, 3149, 87 L.Ed.2d 171 (1985) (state did not consent to suit in federal court by accepting funds under the Rehabilitation Act). See generally *Sault Ste. Marie Tribe*

---

1. The Amendment provides:

 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

 While the language expressly encompasses only suits brought against the State by citizens of another State, the Supreme Court has held that the Amendment prohibits suits against a

State by citizens of that same State as well. *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990).

2. Confusion that existed as to whether *Parden* was a consent or abrogation case was ended by *Blatchford,* in which the Supreme Court rejected the theory that *Parden* was premised upon abrogation.

of Chippewa Indians v. Michigan, 800 F.Supp. 1484 (W.D.Mich.1992). In the absence of an "unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment," *Atascadero*, 473 U.S. at 238 n. 1, 105 S.Ct. at 3145 n. 1, the court concludes no waiver, express or implied, has occurred. See generally, id. at 239–41.

■ But, the absence of a waiver does not prevent Oklahoma from being amenable to litigation, as Congress may abrogate the States' constitutionally secured immunity from suit in federal court "by making its intention unmistakably clear in the language of the statute." *Dellmuth v. Muth*, 491 U.S. 223, 227–28, 109 S.Ct. 2397, 2399–400, 105 L.Ed.2d 181 (1989). Accord *Blatchford*, — U.S. at ——, 111 S.Ct. at 2585. Therefore, the court must determine whether the Indian Gaming Regulatory Act abrogates the States' Eleventh Amendment immunity.

■ "A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment." *Atascadero*, 473 U.S. at 246, 105 S.Ct. at 3149. The fact that Congress has granted the federal courts jurisdiction to hear a claim also is not sufficient to show Congress has abrogated all defenses to that claim. *Blatchford*, — U.S. at —— n. 4, 111 S.Ct. at 2585 n. 4. However, by expressly providing in § 2710(7)(A) for federal jurisdiction over actions by Indian Tribes against States premised on their failure to negotiate or to negotiate in good faith, Congress clearly intended to subject the States to suit in federal court. *Sault Ste. Marie Tribe of Chippewa Indians*, 800 F.Supp. 1484; *Seminole Tribe of Florida v. Florida*, 801 F.Supp. 655 (S.D.Fla.1992); *Poarch Band of Creek Indians v. Alabama*, 776 F.Supp. 550, 557 (S.D.Ala.1991). Defendants' argument to the contrary, in light of the "cascade of plain language," *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 11, 109 S.Ct. 2273, 2279, 105 L.Ed.2d 1 (1989), is unavailing.

■ Even if Congress intended to abrogate the States' immunity, defendant asserts

that its action was invalid, that it lacked the power to subject the States to suit under IGRA. The Tribe contends that Congress possessed the requisite authority under the Indian Commerce Clause,[3] citing *Union Gas Co.*, 491 U.S. at 13–23, 109 S.Ct. at 2280–86.

*Union Gas* is premised on Congress' power under the Interstate Commerce Clause. It was a sharply divided decision and, one of the bases for the Supreme Court's holding— that the States waived their immunity under the "plan of the convention"—was subsequently rejected by the Court in *Blatchford*, — U.S. at ——, 111 S.Ct. at 2582.

Only rarely has the Supreme Court acknowledged congressional power to abrogate State immunity. One instance already noted, is when it acts under the Interstate Commerce Clause; another is when it legislates pursuant to § 5 of the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (Congress possesses the constitutional power under § 5 of the Fourteenth Amendment to authorize damage actions in federal courts against States for violations of Title VII of the Civil Rights Act of 1964). As *Union Gas* is not directly on point, the court concurs with the other district courts that have declined to extend its rationale and equate Congress' plenary power under the Interstate Commerce Clause or § 5 of the Fourteenth Amendment, with its authority under the Indian Commerce Clause. *Poarch Band of Creek Indians*, 776 F.Supp. at 558–59; *Spokane Tribe of Indians v. Washington*, 790 F.Supp. 1057, 1060–61 (E.D.Wash. (1991); *Sault Ste. Marie Tribe*, 800 F.Supp. 1484. *Contra Seminole Tribe of Florida*, 801 F.Supp. 655. This conclusion is bolstered by the Supreme Court's statement during the same term it decided *Union Gas:* "[i]t is well established that the Interstate Commerce and Indian Commerce Clauses have very different applications." *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 192, 109 S.Ct. 1698, 1716, 104 L.Ed.2d 209 (1989). Therefore, the court concludes the plaintiff's action against the State of Oklahoma is barred by the Eleventh Amendment. Whether the Amendment also prohibits the

---

3. Article I, section 8, clause 3 of the United States Constitution gives Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."

plaintiff's suit against the Governor is a separate issue.

Oklahoma's Governor, who has been sued in two capacities, initially asserts that the complaint does not state a claim against him as an individual. The plaintiff's failure to address this argument in its response, while perhaps a matter of oversight, more likely is indicative of the lack of any legal basis for its action against Governor Walters individually. It is, therefore, dismissed with prejudice.

■ The Tribe's claim against the governor in his official capacity cannot be as easily discounted. The plaintiff relies on *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) as authority for its suit against Governor Walters. *Ex parte Young* held that an action to enjoin a state official's action, on the ground it was unconstitutional, is not barred by the Eleventh Amendment. However, as the defendant governor notes, the decision appears to have been applied in cases "[w]here the State itself or one of its agencies or departments is *not* named as defendant and where a state official is named instead ..." *Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986) (emphasis added). One commentator has stated that "if the plaintiff does not make the gross pleading error of naming the state as defendant, injunctive relief against a state officer is not prohibited." Laurence H. Tribe, Intergovernmental Immunities in Litigation, Taxation, and Regulation: Separation of Powers Issues in Controversies About Federalism, 89 Harv.L.Rev. 682, 687 (1976). Here, of course, the plaintiff has named the State as a defendant. Therefore, the pleading default might warrant the dismissal of the plaintiff's lawsuit against the governor in his official capacity. The court will proceed, though, to consider whether the governor, in his official capacity, can be subjected to suit or whether the Eleventh Immunity also bars the plaintiff's claim against him.

■ Under *Ex parte Young*, 209 U.S. at 158–59, 28 S.Ct. at 453–54, a court can direct a state official to perform some duty that does not involve the exercise of discretion, but is merely ministerial. A court order to negotiate in good faith and conclude a tribal-state compact with the plaintiff clearly would infringe on executive discretion and fall outside the parameters of *Ex parte Young*. *Poarch Band of Creek Indians*, 784 F.Supp. 1549, 1551–52 (S.D.Ala.1992). Consequently, the plaintiff's suit against the governor also is barred by sovereign immunity.

## TENTH AMENDMENT

As an alternative basis for their motion, the defendants rely on the Tenth Amendment and its recent application in *New York v. United States*, —— U.S. ——, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). "[T]he Tenth Amendment confirms that the power of the Federal Government is subject to limits that may, in a given instance, reserve power to the States. The Tenth Amendment thus directs us to determine, as in this case, whether an incident of state sovereignty is protected by a limitation on an Article I power." Id. at ——, 112 S.Ct. at 2418.

■ The Court in *New York* considered whether Congress was improperly directing or motivating the states to regulate waste disposal in the Low-Level Radioactive Waste Policy Amendments Act of 1985 ("Radioactive Waste Act"). Although Congress can urge a State, through various measures, to adopt a legislative program that conforms to federal interests, it cannot compel the state to regulate. Conditions may be attached on the receipt of federal funds or Congress may offer States the choice of regulating certain activity according to federal standards or having state law preempted by federal regulation. Id. at —— —— ——, 112 S.Ct. at 2423–24. The specific statutory provisions utilized by the legislature determine whether Congress has properly "encouraged a State to conform to federal policy choices," or impermissibly compelled state regulation. Id.

■ The Tribe and the State and governor offer vastly differing interpretations of IGRA. According to the defendants, "Congress, in enacting the Indian Regulatory Gaming Act, seeks to coerce the State in the exercise of its reserved contracting power" and "to commandeer the State's aid in regulating Class III gaming." Defendants' brief, pp. 37, 39. As construed by the plaintiff, "the only thing required by the IGRA is that an Indian tribe will be able to conduct some form of Class III gaming activities ... If the State refuses to enter into a compact with

the Tribe, no monetary penalties will be asserted by this court against the State for such refusal. The only penalty that can be assessed is indirect—the State will have no voices in determining the benefits it is to receive from the Tribe's Class III gaming activities." Plaintiff's brief, p. 22.

Technically, the Act does offer a State a "choice"—it may enter into a negotiated compact with a Tribe or possibly[4] have a compact forced on it. Here, as in its enactment of the take title provision of the Radioactive Waste Act of 1985, "Congress has crossed the line distinguishing encouragement from coercion." *New York,* —— U.S. at ——, 112 S.Ct. at 2428. A critical alternative is missing in IGRA—a State may not simply decline to regulate Class III gaming; it does not have the option of refusing to act. Significantly, both provisions of the Radioactive Waste Act that the Supreme Court upheld in *New York* as not intruding on the sovereignty reserved to the States, gave the States the option of not regulating radioactive waste disposal. Under IGRA, although a State will not necessarily be required to enact or enforce a regulatory program,[5] the possibility of compulsion, that a state government would be commanded by Congress, acting through the Secretary of Interior, to enact state regulation governing gaming, exists. Thus, the court concludes the Act exceeds the powers of Congress,[6] and the plaintiff's suit against the State and its Governor is precluded by the Tenth Amendment.

As the court has found that the plaintiff's claim against the defendants is barred by the Eleventh and Tenth Amendments, the defendants' motion is granted. Accordingly, this action is dismissed.

IT IS SO ORDERED.

---

**4.** See n. 5 infra. and accompanying text.

**5.** For example, a suit filed by an Indian tribe to compel a State to negotiate may be dismissed, if the court concludes the State has negotiated in good faith or the procedures prescribed by the Secretary might not require the State to enact any legislation or establish any regulatory mechanism.

**6.** As the plaintiff does not seek to have the court sever and enforce other provisions of the Act, it is unnecessary for the court to render a decision regarding severability and the constitutionality of the remainder of the Act.