PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DAVID LYTLE; JEANETTE LYTLE; JOAN
MAGUIRE,
    *Plaintiffs-Appellees,*

    v.

CHARLES D. GRIFFITH, JR., in his
official capacity as Norfolk
Commonwealth Attorney;
HONORABLE JAMES S. GILMORE, III,
in his official capacity as Governor
of the Commonwealth of Virginia,
    *Defendants-Appellants,*

    and

CHARLES R. BREWER, Individually
and in his official capacity as
Lieutenant of the Norfolk Police
Department,
    *Defendant.*

No. 99-2609

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Jerome B. Friedman, District Judge.
(CA-99-1366-2)

Argued: September 29, 2000

Decided: February 16, 2001

Before WILKINSON, Chief Judge, and MICHAEL and KING,
Circuit Judges.

Remanded by published opinion. Judge King wrote the majority opinion, in which Judge Michael joined. Chief Judge Wilkinson wrote a dissenting opinion.

_____

## COUNSEL

**ARGUED:** William Henry Hurd, Solicitor General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellants. Michael Joseph DePrimo, AMERICAN FAMILY ASSOCIATION CENTER FOR LAW AND POLICY, Tupelo, Mississippi, for Appellees. **ON BRIEF:** Mark L. Earley, Attorney General of Virginia, Judith Williams Jadgmann, Deputy Attorney General, Gregory E. Lucyk, Senior Assistant Attorney General, Kevin O. Barnard, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellants. Stephen M. Crampton, Brian Fahling, AMERICAN FAMILY ASSOCIATION CENTER FOR LAW AND POLICY, Tupelo, Mississippi, for Appellees.

_____

## OPINION

KING, Circuit Judge:

This appeal relates to whether James S. Gilmore, III, the Governor of the Commonwealth of Virginia (the "Governor"), is protected by the Eleventh Amendment from suit in the underlying action — an issue the Governor failed to raise in the district court prior to this appeal. In the underlying case, the district court granted a preliminary injunction barring enforcement of Virginia Code section 46.2-930, which prohibits loitering on designated bridges. *See* Order and Opinion of November 2, 1999 ("Order"); Order of June 1, 2000 ("Modifying Order").

The Governor and his fellow defendant, Charles D. Griffith, Jr., the Commonwealth's Attorney for the City of Norfolk ("Griffith"), do not seek to overturn the injunction on its merits. Rather, the Governor asserts that he lacks a sufficient connection to enforcement of the challenged statute and, thus, cannot be made a party to this action pur-

suant to the exception to sovereign immunity found in *Ex parte Young*, 209 U.S. 123, 159-60 (1908) (permitting federal actions against appropriate state officers for prospective relief from continuing violations of federal law). Although we possess jurisdiction, we remand in order for the district court to consider the issue in the first instance.

I.

A.

Enacted in 1966 and last amended in 1989, the challenged statute provides, in its entirety:

> Pedestrians shall not loiter on any bridge on which the Commonwealth Transportation Commissioner has posted signs prohibiting such action. Any person violating the provisions of this section shall be guilty of a traffic infraction.

Va. Code Ann. § 46.2-930 (Michie's 1998 & Supp. 2000). The maximum penalty for violating the statute is a fine of two hundred dollars. *See* Va. Code Ann. § 46.2-113 (Michie's 1998). For purposes of arrest, traffic infractions are treated as misdemeanors. *See* Va. Code Ann. § 46.2-937 (Michie's 1998). Otherwise, traffic infractions are "violations of public order . . . and not deemed to be criminal in nature." Va. Code Ann. § 18.2-8 (Michie's 1996 & Supp. 2000).

The powers of the Governor are set forth in article V of the Constitution of Virginia and in the Virginia Code. The Governor is the chief executive officer of the Commonwealth of Virginia (the "Commonwealth"). *See* Va. Const. art. V, § 1. He must "take care that the laws be faithfully executed." Va. Const. art. V, § 7. He appoints the Superintendent of State Police, *see* Va. Code Ann. § 52-2 (Michie's 1998), and he is the commander-in-chief of the Commonwealth's armed forces, *see* Va. Code Ann. § 44-8 (Michie's 1999). The Governor has the authority to summon law enforcement agencies to suppress riots and preserve the peace when local efforts prove insufficient. *See* Va. Code Ann. § 18.2-410 (Michie's 1996). He also has the power to request criminal prosecutions by the Attorney General, *see* Va. Code Ann. § 2.1-124 (Michie's 1995 & Supp. 2000).

## B.

The plaintiffs, David Lytle, Jeanette Lytle, and Joan Maguire (collectively, the "Lytles"), filed this action under 42 U.S.C. § 1983 seeking to enjoin enforcement of section 46.2-930 on the ground that the Virginia statute unlawfully abridges First and Fourteenth Amendment rights.[1] The Lytles are anti-abortion protesters who, on July 16, 1999, faced arrest pursuant to section 46.2-930 during a demonstration on the Picadilly Overpass, a pedestrian bridge crossing Interstate 64 in the City of Norfolk (the "City"). The Lytles displayed large placards from the bridge — which bore a no-loitering sign — to passing motorists on the interstate highway below. Some forty-five minutes into the demonstration, police arrived and warned the Lytles and fellow protesters that they would be arrested unless they ceased their activities. The Lytles left the overpass after observing the arrests of two of their confederates. It was later discovered that despite the no-loitering sign, the overpass had not been designated by the Commonwealth Transportation Commissioner (the "Commissioner") under the provision of section 46.2-930.

## C.

Following their encounter with police, the Lytles received assurances from representatives of the Commonwealth and the City that enforcement of section 46.2-930 would be — at least temporarily — suspended, and charges were dismissed against the two protesters who had been arrested. Unappeased, the Lytles filed their action in the district court and immediately moved for a preliminary injunction. The district court heard arguments on their motion on October 7, 1999, and, the following day, received additional written assurances from the Governor and Griffith regarding the Commonwealth's enforcement of the statute. Being "unpersuaded that the defendants'

---

[1]Additionally, the Lytles seek a declaratory judgment that the statute is unconstitutional, and nominal damages from the City of Norfolk (the "City"). They also requested nominal and punitive damages from Charles Brewer, a lieutenant of the Norfolk Police Department, but he was dismissed as a party on December 15, 1999. According to the briefs filed in this court, the district court thereafter granted leave to the Lytles to file an amended complaint naming the City as a defendant.

assurances adequately protect the constitutional rights of the plaintiffs[,]" the court granted the preliminary injunction. *See* Order, at 6, 24. The injunction prohibits enforcement of section 46.2-930, bars further designation of any bridges under the statute, directs immediate covering or removal of existing no-loitering signs, and orders "whatever steps are necessary and appropriate to notify local law enforcement within the Commonwealth regarding the substance of this Order[.]" *Id.* at 24.

The Governor and Griffith filed a notice of appeal on December 3, 1999. On appeal, they alleged for the first time that: (1) the injunction violated the principles of sovereign immunity because, by its express language, it enjoined "the Commonwealth" directly;[2] (2) sovereign immunity protects the Governor from this action; and (3) because the Governor should be dismissed as a party, the scope of the injunction should be limited to the City.[3]

---

[2]This issue — naming of "the Commonwealth" directly — was rendered moot, however, when the district court modified the injunction to replace dubious references to "the Commonwealth" with the names of the Governor and Griffith. *See* Modifying Order, at 12. The court explained that it had used the term "the Commonwealth" to refer to the Governor and Griffith throughout its earlier opinion on the motion for preliminary injunction, and had mistakenly carried over that shorthand reference into the injunction order. *See id.* at 9. "[T]he Commonwealth," the district court clarified, "is not a defendant in this matter, and the Court should have been more clear in its Order enjoining the enforcement of the statute." *Id.* (footnote omitted).

We note that the Modifying Order was issued on June 1, 2000, subsequent to the filing of the notice of appeal. Generally, the filing of a notice of appeal immediately transfers jurisdiction of all matters relating to the appeal from the district court to the court of appeals. *See In re Grand Jury Proceedings Under Seal*, 947 F.2d 1188, 1190 (4th Cir. 1991) (citations omitted). However, the district court possessed jurisdiction to modify the injunction under an exception to the general rule: "[A] district court does not lose jurisdiction to proceed as to matters in aid of the appeal." *Id.* (citations omitted). The district court aided in this appeal by relieving us from considering the substance of an issue begotten merely from imprecise wording in the injunction.

[3]When the merits of the preliminary injunction were argued in the district court, the Governor and Griffith asserted that the Commonwealth

After filing their notice of appeal on December 3, 1999, the Governor and Griffith finally raised the sovereign immunity issues in the district court, in a December 14, 1999 motion to dismiss the Governor and to modify the Order. They also requested a stay of the preliminary injunction pending appeal. However, according to the district court, these motions were neither scheduled for hearing by counsel nor referred to the court for a decision on the briefs. Then, on March 30, 2000, the Governor and Griffith filed a second motion to dismiss, again raising many of these same issues in the district court. This motion, unlike the earlier motions, was scheduled for hearing. The court, "[i]n the interest of efficiency, judicial economy, and to clear any confusion in the record of this case," chose to discuss each of the pending motions. *See* Modifying Order, at 2. However, after reviewing relevant authorities regarding the Governor's sovereign immunity defense, the court deferred ruling on the motion to dismiss pending disposition of this appeal. *See id.* at 2-9, 12. The court also clarified the language of its earlier Order, *see id.* at 12; *supra* note 2, and denied the motion for a stay of the injunction pending appeal, *see* Modifying Order, at 12.

## II.

We possess jurisdiction, pursuant to 28 U.S.C. § 1292(a)(1), to hear appeals from orders granting injunctions. Moreover, although the ground for appeal in this case — sovereign immunity — was not raised in the district court, we nonetheless possess jurisdiction to determine the matter. *See Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997) (recognizing that a court may consider the issue of Eleventh Amendment immunity, because of its jurisdictional nature, at any time).

---

would be irreparably harmed if the court enjoined enforcement of section 46.2-930, because the statute is "one of the tools available to the Commissioner . . . to promote safety on Virginia roadways." Order, at 11. The Governor and Griffith have not raised any such safety concern on appeal, and do not otherwise challenge the merits or propriety of the injunction.

### III.

### A.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the Eleventh Amendment, by its terms, applies only to suits brought against a state by "Citizens of another State," it is well established that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (citations omitted). State officers acting in their official capacity are also entitled to Eleventh Amendment protection, because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted).

A well-recognized exception to this rule is found, however, in *Ex parte Young*, 209 U.S. 123 (1908), which allows suits against state officers for prospective equitable relief from ongoing violations of federal law. *See Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 269 (1997) ("We do not . . . question the continuing validity of the *Ex parte Young* doctrine."). In *Ex parte Young*, the Supreme Court began with the premise that states are incapable of authorizing unconstitutional conduct, and created the fiction that a state officer engaging in unconstitutional conduct is no longer acting as a state agent — and, thus, is no longer protected by the Eleventh Amendment. *See* 209 U.S. at 159-60. As to identifying proper defendants, the Court held that

> [i]n making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that *such officer must have some connection with the enforcement of the act*, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party.

*Id.* at 157 (emphasis added). The Court further instructed that "[t]he fact that the state officer by virtue of his office has some connection with the enforcement of the act is the important and material fact, . . . whether it arises out of the general law, or is specially created by the act itself[.]" *Id.*

B.

In this case, the Lytles assert that the Governor has a sufficient connection under *Ex parte Young* to the enforcement of section 46.2-930 because he has a duty to "take care that the laws be faithfully executed," Va. Const. art. V, § 7; he is the chief executive officer of the state, *see id.* art. V, § 1; he is the commander-in-chief of the Commonwealth's armed forces, *see* Va. Code Ann. § 44-8; he has authority to order state and local law enforcement agencies to preserve the peace, *see id.* § 18.2-410; and he appoints the Superintendent of Police, *see id.* § 52-2. Additionally, they argue that because their fellow protesters "were arrested, handcuffed, and taken into custody for purportedly violating the loitering statute[,] . . . the offense *must* be deemed criminal in nature[.]" Brief of Appellees, at 14 n.7 (emphasis in original). Thus, the Lytles reason, the Governor has the power, pursuant to Virginia Code section 2.1-124, to request the Attorney General to prosecute violations of section 46.2-930.

The Governor, on the other hand, asserts that a violation of the statute is a non-criminal traffic infraction that does not implicate his authority to seek prosecutions by the Attorney General. He also rejects the purported connections between the gubernatorial powers cited by the Lytles and enforcement of the anti-loitering statute. The Governor argues that the Lytles are left with his general duty to "take care that the laws be faithfully executed," Va. Const. art. V, § 7, which is simply not sufficient to merit an exception to sovereign immunity. Moreover, the Governor asserts that "it is difficult, if not impossible, to imagine the Governor using the power of his office to enforce the act — a traffic violation." Reply Brief of Appellants, at 9.

In addition to these factual and legal disputes, the Governor and Griffith assert that rather than choosing the Governor as a defendant, the Lytles should have either sued the Commissioner, or brought their

case as a class action naming one or more Commonwealth's Attorneys as class representatives, *see, e.g.*, *Virginia Soc'y for Human Life, Inc. v. Caldwell*, 152 F.3d 268 (4th Cir. 1998). The Lytles counter that the only relevant duty of the Commissioner with regard to section 46.2-930 is determining where to post anti-loitering signs, and he has no authority over state and local law enforcement agencies. Further, although they perhaps could have sued Commonwealth's Attorneys as class representatives, they instead, "as masters of their complaint, . . . appropriately chose to sue the chief executive officer of the state, Governor Gilmore[.]" Brief of Appellees, at 29.[4]

## C.

Although we possess jurisdiction to decide the sovereign immunity issue, *see supra* Part II, we also have the discretion to decline to do so until the district court has had the opportunity to consider the matter. Where "'[t]he District Court is in the best position to address in the first instance the competing questions of fact and state law necessary to resolve the [E]leventh [A]mendment issue,' . . . we remand for that purpose." *Keller v. Prince George's County*, 827 F.2d 952, 964

---

[4]Although the district court deferred ruling on the sovereign immunity issue, it did agree with another of the Lytles' contentions, that "the Governor's inconsistency in litigating cases in the Commonwealth (as to whether he does or does not move to dismiss when he is named personally in a case) cuts against the Governor's argument that he should be immune from suits challenging the constitutionality of state statutes under the Eleventh Amendment." Modifying Order, at 7. The district court observed:

> Most notably, the [Lytles] refer to the Governor's status as a defendant in the recent partial birth abortion case, *Richmond Medical Center for Women v. Gilmore*, 11 F. Supp. 2d 795 (E.D. Va. 1998) . . . . The Governor argues that his litigation tactics in other cases should not impact this Court's decision, and essentially, that he should not be required to make consistent legal arguments in each case. While the inconsistency of the Governor's arguments should not be the sole basis for denying the instant motion, the Court disagrees with the Governor's position on this issue.

*Id.*

(4th Cir. 1987) (quoting *Patsy v. Board of Regents*, 457 U.S. 496, 516 n.19 (1982)); *accord Gray v. Laws*, 51 F.3d 426, 434 (4th Cir. 1995); *Roberts v. College of the Desert*, 870 F.2d 1411, 1415 (9th Cir. 1989) ("We decline to decide this [Eleventh Amendment] question, believing that it is one for the district court to determine in the first instance, coincident with the development of an appropriate factual record.").

In *Keller*, we were presented with an Eleventh Amendment argument that rested on whether a county social services department was an arm of the state government. *See* 827 F.2d at 964. We remanded the case to the district court to develop a record on the issue and perhaps "resolve some of the [E]leventh [A]mendment difficulties in this case by permitting amendments to the pleadings." *Id.* Facing a similar question in *Gray*, we remanded for the district court to reconsider the sovereign immunity issue in light of intervening Supreme Court precedent. *See* 51 F.3d at 430, 434. Citing *Keller*, we noted that it was "especially true" that the district court was in the best position to address the issue in the first instance, "given the barrenness of the record." *Id.* at 434.

The sovereign immunity issue raised by the Governor encompasses two significant questions: (1) What is the Governor's connection, if any, to the enforcement of the challenged anti-loitering statute? and (2) If there is a connection, is it sufficient to implicate the exception to sovereign immunity found in *Ex parte Young*? The first question, at least, requires a determination of disputed questions of fact and state law — and we have been provided with an incomplete record on which to address these questions, even if we were mandated to do so.

By remanding, we enable the district court to handle this case in the normal and most orderly fashion, and we permit it to address in the first instance the relevant questions of fact and state law. Moreover, in light of the disagreement over the naming of appropriate defendants, the district court may consider permitting amendments to the pleadings to resolve any Eleventh Amendment difficulties in this case. Such a remand would not, apparently, be unwelcome by the district court. In staying the motion to dismiss the Governor pending our decision, Judge Friedman commented:

> The Court understands and agrees that the claim for immunity is not waived if not argued before the District Court. However, the Court questions the defendant's tactic and use of judicial resources in pursuing an appeal of a preliminary injunction on a jurisdictional issue without first addressing the question at the District Court level.

Modifying Order, at 3. We note also that, although the district court deferred ruling on sovereign immunity, the court had first researched and discussed the applicable authorities on this question. Because we conclude that the district court should have the opportunity to address this issue in the first instance, we are constrained to remand.[5]

*REMANDED*

WILKINSON, Chief Judge, dissenting:

I respectfully dissent from the decision to remand this case. The parties have thoroughly briefed and argued the Eleventh Amendment question. It is ripe for resolution. The Governor of Virginia simply is not a proper party to this suit. There is no indication that the Governor actively enforced the challenged traffic statute or that he intends to do so in the future. Furthermore, the Governor's general duty to enforce the laws of Virginia does not satisfy *Ex parte Young*'s requirement

---

[5]We observe that it is passing strange to utilize an interlocutory appeal of an injunction (where we possess jurisdiction under 28 U.S.C. § 1292(a)(1)) to seek review of an issue never raised in the district court, particularly in a circumstance where the appellant has abandoned appellate review of the injunction's propriety. *See supra* note 3. We have not addressed the merits of this issue, and need not do so; our position may or may not be in accordance with that espoused in the dissent of our good Chief Judge. Rather, we believe this case should be handled in a routine and orderly manner, and without the specter of an advisory opinion on an issue the district court has not been permitted to fully address. While the dissent maintains that "[r]emanding this case serves only to encourage future plaintiffs to denominate Governors routinely as party defendants in the hope that a 'special relation' may one day appear," *post*, at 13 n.*, remand should in fact serve to discourage litigants and their counsel from engaging in court-shopping, an untoward maneuver that, as the district court indicated, may well lie at the root of this unusual appeal.

that the Governor bear a "special relation" to the statute under challenge. Any other result would routinely subject a Governor to suits challenging the validity of the most minor of state laws and regulations. I would dismiss the Governor as a defendant in this action.

I.

As an initial matter, I disagree with my good colleagues that a remand in this case is appropriate. It is proper to consider here the Eleventh Amendment question even though Virginia did not raise it in the district court prior to filing this appeal. *See Edelman v. Jordan*, 415 U.S. 651, 677-78 (1974) (holding that a defendant may raise an Eleventh Amendment argument in the court of appeals, even after failing to do so in the lower court); *Suarez Corp. Industries v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997) ("We believe that, because of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte*.").

Remand serves no useful purpose in this case. Both parties have ably briefed and argued this issue. Indeed, the district court has stated that it is waiting for this court to decide it. This court fully understands the Eleventh Amendment issue and its application to the facts here. As a result, we have an obligation to render a decision.

Furthermore, the parties deserve better than to have a preliminary issue remanded by this court. We ought not to lose sight of the fact that this is an interlocutory appeal. *See* 28 U.S.C. § 1292(a)(1). Remand on a preliminary matter will only delay the parties in reaching the merits of their case. By contrast, even if the Governor is removed from this case, the plaintiffs may name a more suitable state official as defendant and proceed with their suit.*

---

*The majority suggests that any opinion on the Governor's status might somehow be advisory. *See supra*, n.5. Not so. This appeal squarely presents a jurisdictional issue, which is not going to disappear upon remand.

Plaintiffs bear the burden of alleging facts which, if proven, would establish that the Governor actually belongs in the suit. This plaintiffs have failed to do. Plaintiffs have not even requested a remand for find-

## II.

Turning to the Eleventh Amendment question, it is clear that the Governor is not a proper party to this action.

### A.

*Ex parte Young*, 209 U.S. 123 (1908), permits citizens to sue state officials to enjoin the enforcement of unconstitutional laws. This rule is an exception to the general constitutional command that federal courts do not have jurisdiction over suits by citizens against the states. The *Young* exception is limited, however, by its requirement that named state officials bear a special relation to the challenged statute. *Young* recognized that the fundamental purpose of the Eleventh Amendment would be thwarted if parties could name any state official in an action. The Court stated that "it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party." *Young*, 209 U.S. at 157.

*Young*'s "special relation" requirement prevents parties from circumventing the dictates of the Eleventh Amendment. *Young* demands precision in naming parties because otherwise:

> the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the State, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the State in litigation involving the enforcement of its statutes.

---

ings of jurisdictional facts, nor have they suggested that the Governor bears anything other than the general legal connection of any chief executive to the challenged enactment. Remanding this case serves only to encourage future plaintiffs to denominate Governors routinely as party defendants in the hope that a "special relation" may one day appear. This is not what I understand the rule of *Ex parte Young* to be about.

*Young*, 209 U.S. at 157 (*quoting Fitts v. McGhee*, 172 U.S. 516, 530 (1899)). The Supreme Court recognized that such a strategy might be a convenient way to obtain a speedy determination of constitutional questions. However, that strategy "cannot be applied to the States of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons." *Id.* at 157 (*quoting Fitts*, 172 U.S. at 530).

*Young* went on to note that general grants of authority may sometimes create a "special relation" between a state official and the challenged statute. The Court held: "The fact that the state officer by virtue of his office has some connection with the enforcement of the act is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists." *Young*, 209 U.S. at 157. *Young* failed to explain, however, what type of "general laws" create a sufficient connection. It is upon this question that the current appeal now turns.

### B.

The question of whether the Governor of Virginia has any "special relation" to Virginia Code § 46.2-930 is determined by analyzing state law. *See Young*, 209 U.S. at 157. The text of § 46.2-930 reads in full:

> *Loitering on Bridges*. Pedestrians shall not loiter on any bridge on which the Commonwealth Transportation Commissioner has posted signs prohibiting such action. Any person violating the provisions of this section shall be guilty of a traffic infraction.

The text makes no mention of the Governor. Rather, the only state official mentioned by § 46.2-930 is the Commonwealth's Transportation Commissioner, who has authority to post signs prohibiting loitering. Furthermore, Virginia law delegates the enforcement of the challenged statute to local police officers. *See* Va. Code § 46.2-937.

The plaintiffs argue, however, that Governor Gilmore is sufficiently connected to § 46.2-930 by virtue of his general duties as Governor. They contend that *Young*'s special relation requirement

applies solely to state officials, such as the Secretary of Education, who have "no duty *at all* with regard to the act." *Young*, 209 U.S. at 158 (emphasis added). By contrast, the plaintiffs argue that Governor Gilmore's duty to "take care that the laws be faithfully executed" sufficiently connects him to § 46.2-930. *See* Va. Const. art. V, § 7. The Governor also has authority to request that the Attorney General prosecute § 46.2-930, or to summon law enforcement agencies to enforce the Act if such enforcement is necessary to preserve the peace and safety of the Commonwealth. *See* Va. Code §§ 2.1-124; 18.2-410.

I do not think that the Governor's general authority to enforce the laws of the Commonwealth is sufficient to satisfy *Young*'s special relation requirement. "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996) (*citing 1st Westco Corp. v. School Dist. of Philadelphia*, 6 F.3d 108, 113 (3d Cir. 1993)); *see also Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998) ("[A] generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit") (*citing Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)); *Mendez v. Heller*, 530 F.2d 457, 460 (2d Cir. 1976) (attorney general's duties to support the constitutionality of challenged state statutes and to defend actions in which the state is interested do not make him a proper defendant); *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979) (general duty of governor "to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute"). To hold otherwise would extend *Young* beyond what the Supreme Court has intended and held. *See Children's Healthcare*, 92 F.3d at 1416; *see also Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984).

Rather, it is only appropriate to allow a state official to be named in a suit based on his general duties where there is a "real, not ephemeral, likelihood or realistic potential that the connection will be employed against the plaintiff's interests." *1st Westco*, 6 F.3d at 114 (internal citation omitted); *see also Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (per curiam) (holding that state attorney general was not proper party where there was no real likelihood that he

would enforce his supervisory powers against the plaintiffs' interest); *Sherman v. Community Consol. School Dist. 21*, 980 F.2d 437, 440-41 (7th Cir. 1992) (holding that state attorney general was not proper party where he never threatened the plaintiffs with prosecution and apparently had no authority to do so). This requirement is consistent with *Young*, where the Minnesota Attorney General had already commenced proceedings to enforce the challenged statute. *Young*, 209 U.S. at 160.

Here, the Governor bears no real connection to the enforcement of § 46.2-930. There is no allegation that the Governor ordered its enforcement against the plaintiffs. Insofar as this record shows, the Governor has never ordered its enforcement against anyone. Nor is there a real likelihood that the Governor will ever use the power of his office to enforce a mere traffic infraction, a violation of which is punishable by a fine and costs totaling forty-three dollars. Furthermore, since traffic infractions are "not deemed to be criminal in nature" under Virginia law, *see* Va. Code § 18.2-8, it is doubtful whether the Governor's separate power to request criminal prosecution by the Attorney General is even implicated in this case. *See* Va. Code § 2.1-124.

Removing the Governor as defendant will not have the effect of pushing the plaintiffs out of court. The plaintiffs can still seek relief by naming as defendant the Commonwealth's Transportation Commissioner. As the text of § 46.2-930 explicitly indicates, the Commissioner plays a crucial role in the statutory scheme. It is only by his designation that a bridge may receive a "No Loitering" designation under the Act. Without this designation, no state official can enforce § 46.2-930. Likewise, the Commissioner possesses the authority to cover the signs if the court orders him to do so, thus rendering § 46.2-930 unenforceable. By contrast, the Governor has no special relation to this law, nor is there any indication that the Governor himself intends to enforce the law in the future.

## C.

If the Governor is forced to remain a party to this suit, then the Governor also may be named in lawsuits challenging the validity of any state law. Such an approach would be problematic in several

ways. First, such a practice would be inconsistent with the approach governing suits which challenge federal laws. Such suits are not routinely brought against the President simply by virtue of his constitutional duty to enforce the laws. Rather, other federal officials who bear a discernable relationship to the challenged statute are typically named. *See*, *e.g.*, *Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997) (Attorney General named as a defendant in a suit challenging the constitutionality of federal statute criminalizing the knowing transmission of indecent materials to minors); *National Endowment for the Arts v. Finley*, 524 U.S. 569 (1998) (Chairperson of the NEA named as a defendant in a suit challenging the constitutionality of federal statute requiring NEA to ensure that grants are awarded based upon artistic excellence and artistic merit); *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998) (Commissioner of Social Security named as a defendant in a suit challenging the constitutionality of federal statute requiring coal company to pay premiums for beneficiaries assigned by Commissioner). Moreover, when cases challenge the validity of federal regulations, the defendant is generally the Secretary of the department that issued them. *See*, *e.g.*, *Regions Hosp. v. Shalala*, 522 U.S. 448 (1998); *Public Lands Council v. Babbitt*, 529 U.S. 728 (2000). The President's general duty to ensure that the laws of the land are faithfully executed does not mean that the President is a defendant in every suit testing the validity of a federal enactment.

Next, permitting a party to name the Governor in any suit challenging the validity of state law would allow the rule in *Ex parte Young* to swallow the protections offered by the Eleventh Amendment. Plaintiffs could routinely name the Governor as a defendant in an effort to obtain a judgment binding on the State. Plaintiff's approach would also regularly subject the Governor to the risk of contempt. The President of the United States may not be enjoined in the performance of his official duties. *See Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867). This rule is founded partly upon an unwillingness to subject the head of the Executive branch to the possibility of being cited for contempt. Unlike his Cabinet officers and other subordinate officials, the Governor is the embodiment of the Executive power in Virginia. Subjecting governors gratuitously to the threat of citations for contempt is an unwarranted federal interference with the administration of state government.

At the very least, this court should leave it to the states to choose which officials they would subject to binding federal decrees. The federal courts should not lightly interfere with state decisions on the very organization of state governments. It is difficult to imagine a more fundamental intrusion on state sovereignty. The Supreme Court drew this line as far back as 1911 in *Coyle v. Smith*, 221 U.S. 559, 565 (1911), where it forbade the federal government from ordering the State of Oklahoma to locate its capital in a certain city. *See also Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991) (holding that the states' right to structure their internal governmental operations and to create restrictions on the exercise of government authority is "a decision of the most fundamental sort for a sovereign entity"). Plaintiffs ask us to interpret Virginia law to bestow upon the Governor an obligation to enforce a mere traffic statute. However, Virginia's officials have designed state operations so that the Governor is not charged with the enforcement of § 46.2-930. The Virginia legislature determined that the Transportation Commissioner and the local police would assume this duty. Likewise, the Governor has not assumed that duty by attempting to enforce this statute. Implicit in the legislature's and the Governor's choice is a desire not to subject the Governor of the Commonwealth to the onus of judicial process in suits seeking to enjoin enforcement of § 46.2-930. Holding that the Governor bears a special connection to this statute simply neglects Virginia's decisions in this area.

## III.

The purpose of the "special relation" requirement is not to erect barriers for parties seeking to enforce their constitutional rights under *Ex parte Young*. Rather, the requirement merely seeks to enforce a modicum of precision in determining which state officials are named. In this case, officials other than the Governor bear the duty of enforcing § 46.2-930. To allow the Governor to remain a named party in this case would eviscerate the limits *Young* established and reorder settled Eleventh Amendment law.

I would dismiss the Governor as a defendant in this case.